THE POTOMAC STEAMBOAT COMPANY *vs.* THE HARLAN AND HOLLINGSWORTH COMPANY.

*Practice in the Court of Appeals—Breach of Contract— Breach of Warranty—Contributory Negligence.*

Any point or question which does not plainly appear by the record to have been tried and decided by the Court below, will not be considered by the Appellate Court.

Where in a contract to build a steamboat, it was stipulated that the machinery throughout should be of the best material, and the workmanship first-class, and there is a failure in the observance of this stipulation, there is a breach of the contract, but no breach

Potomac Steamboat Co. *vs.* Harlan & Hollingsworth Co.

of warranty, as there can be no express warranty of the quality of that which does not exist.

In a contract for building a steamboat it was stipulated that the purchaser should have the privilege of placing with the builder, during all the time the boat was being constructed, a suitable and competent person to superintend her construction, and every facility should be given him to inspect the work and materials at all times, with the right to reject anything that did not come up to the requirements of the contract, and also to alter and change the style. In pursuance of this stipulation, a competent person was selected by the purchaser to superintend the construction of the steamboat, who had every facility given him to inspect the work and materials, by being allowed free access to the builder's shops and premises, and who attended there from day to day for the purpose of the duties thus assigned him, and brought his engineer with him to assist in his inspection of the machinery. After the boat was completed, delivered and accepted, and had been in use for years, the straps of the starboard walking-beam gave way, causing very serious injury to the boat. In an action by the purchaser to recover damages of the builder, it was HELD:

That if the damage done to the steamboat was caused by any negligence on the part of the plaintiff's agent, it was contributory negligence, and there could be no recovery.

APPEAL from the Baltimore City Court.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, ROBINSON, IRVING, RITCHIE, and BRYAN, J.

*J. Southgate Lemon,* for the appellant.

*W. L. Marbury,* and *A. H. Robertson,* for the appellee.

YELLOTT, J., delivered the opinion of the Court.

The Potomac Steamboat Company, a body corporate, instituted an action in the Baltimore City Court, against the Harlan and Hollingsworth Company, another body

corporate, for the recovery of damages. It is averred in the declaration that, in conformity with the terms of a contract under seal, the defendant undertook to build for the plaintiff a large wooden side-wheel steamboat with the requisite propelling engines and machinery, ready and complete for service; and promised and covenanted that the said steamboat and machinery should be made of the best material, and should be constructed and put together in the most substantial manner. It is further alleged that while said steamboat, after it had been constructed and delivered to the plaintiff, was being used in an usual and proper manner, the walking-beam of the machinery suddenly gave way, because of the imperfection of the material and workmanship, and not only greatly damaged the vessel, and thus rendered expensive repairs necessary, but also caused serious loss to the plaintiff by the cessation of its ordinary business, while the vessel was being put in a safe and proper condition for service.

All errors of pleading are waived by counsel representing the parties to the cause; and the written agreement, and the specifications forming a part of said agreement, are embodied in the record as a portion of the evidence introduced by the plaintiff at the trial of the cause in the Court below.

In the specifications it is stipulated that the machinery throughout is "to be of the best material, and the workmanship to be first-class." And in the body of the written instrument, "it is further agreed, that for the period of four months following the date of completion, and delivery of said boat, the party of the first part shall have the privilege of selecting the engineers and firemen to be employed on said boat, and the wages of same are to be paid by the party of the second part; and during the four months time herein provided for, that the machinery being in charge of the engineers and firemen so selected and placed, the party of the first part agrees to

be responsible for the well working of the boat; and if defects of any kind, either in workmanship or materials, should be discovered, they bind themselves to remedy such defects, and leave the machinery in complete working order; not binding themselves, however, for the natural wear and depreciation incident to the use of the machinery during the period of four months time named." Then follows a guarantee in relation to the speed of the boat and the mode by which it shall be tested and determined.

Another and a most important stipulation is that, " the party of the second part shall have the privilege of placing with the party of the first part, during all the time the boat is being constructed, a suitable and competent person to superintend her construction, and every facility shall be given him to inspect the work and materials at all times, with the right to reject anything that does not come up to the requirements of the contract, and also to alter or change the style. In case there should, at any time, arise a difference of opinion between the superintendent and the builders, or between the parties to this contract, touching any matter under this agreement which cannot be adjusted amicably, each party shall appoint one disinterested and competent person and they two, shall select a third person, to whom as a body, all matters in dispute shall be referred for adjustment and settlement, and their decision shall be binding upon both parties."

In addition to the written evidence thus offered, the plaintiff adduced parol proof tending to show that the injury, forming the foundation for this action, resulted from the imperfection in the workmanship and materials entering into the construction of the machinery. This evidence is met by countervailing proof introduced by the defendant, who also adduces evidence for the purpose of showing that a suitable and competent person, selected by the plaintiff to superintend the construction, had every facility given him to inspect the work and materials by

being allowed free access to the defendant's shops and premises, and that he was there from day to day for the performance of the duties thus assigned to him.

It was earnestly urged in argument by appellee's counsel, that by a proper and obvious construction of the contract, the liability of the defendant could not be extended beyond the period of four months, mentioned in one of the clauses which has been transcribed. Had this question been presented and determined in the Court below, it might now be properly considered. But it is not disclosed by the record that the decision of this question was invoked in the Court of original jurisdiction, and by the fourth rule respecting appeals it is provided that,

"In no case shall the Court of Appeals decide any point or question which does not plainly appear by the record to have been tried and decided by the Court below."

There are four counts in the declaration, two on the breach of an alleged warranty; and two on the infraction of the terms of the written agreement; and there is a waiver of all errors in pleadings. The appellant contends that by the terms of the contract, a warranty was created because the acceptance of the vessel and the payment of the price agreed upon, would not have occurred had it not been for the reliance on the stipulation that the machinery throughout was "to be of the best material and the workmanship first-class."

It may not be denied that an express affirmation of quality intended to operate on the mind of a vendee as an inducement to make a purchase, and so operating, constituted a warranty. The authorities furnished by the older, and the late adjudications tend strongly in this direction. The principle was enunciated by Lord HOLT in *Cross vs. Garnet*, 3 *Mod.*, 261, and subsequently recognized in the leading case of *Pasley vs. Freeman*, 3 *T. R.*, 57, in which case BULLER, J., said that "it was rightly held by Lord HOLT, and has been uniformly adopted ever since, that an

affirmation at the time of a sale is a warranty, provided it appear on evidence to be so intended." This rule was announced in *Osgood vs. Lewis*, 2 *H. & G.*, 518; and in a case, more recently decided by this Court, it was said that,

"The rule of law is, that any affirmation of the quality of the article, made at the time of the sale, intended as an assurance of the fact stated, and relied on and acted on by the purchaser, will constitute an express warranty. This rule all the authorities lay down, and it is not thought necessary to make special citations." *Crenshaw vs. Slye*, 52 *Md.*, 146.

But as was said in *Blood vs. Howard Fire Ins. Co.*, 12 *Cush.*, 473, "a warranty will in no case be extended by construction." In the case now under consideration, the defendant contracted to build a steamboat of the best material and workmanship. If it failed to do so there was a breach of contract, but there was no warranty, because there can be no express warranty of the quality of that which does not exist.

The appellant excepts to the rejection of its first prayer; to the granting of the appellee's seventh prayer; and to the giving by the Court of its own instructions. It is deemed expedient to transcribe those prayers and instructions. The plaintiff's first prayer reads as follows:

"That if the jury shall believe from the evidence in the case that the plaintiff and defendant executed the agreement and specifications 'A,' offered in evidence, if the jury shall find the same, and that the steamboat Excelsior, named in the evidence, was subsequently built by the defendant and tendered to the plaintiff as being the steamboat in said agreement contracted for, and was, by the plaintiff accepted, as such steamboat, (if the jury shall find such steamboat, delivery and acceptance,) and that the plaintiff paid for said Excelsior the full price in said agreement called for; and that at the time of such de-

livery and acceptance, there was a flaw in the welding of
a part of the machinery of said Excelsior, known as the
' walking-beam ; ' and that subsequently, on or about July
9th, 1884, while the weather was fair and the water
smooth, and while said Excelsior was on a voyage from
Washington to Norfolk, said walking-beam, by reason of
said defective welding, suddenly broke and gave way, and
in so breaking and giving way, other damage to other
parts of said machinery and steamboat did, and that the
same was caused by such defective welding, and was not
caused by any negligence on the part of the plaintiff; and
if the jury shall further find, that the defect in the weld-
ing of said walking-beam had not become known to the
plaintiff or any of its employés, prior to such giving way,
and that such defect, by reason of its character and loca-
tion, could not have been discovered by any examination
or inspection on the part of the plaintiff, which would
have been under the circumstances detailed in the evi-
dence, ordinary and proper in such circumstances; and
shall further find, that such defect in said walking-beam,
was not caused by any such usage of said boat by the
plaintiff, as the jury may, from the evidence, find the
plaintiff to have made of said steamboat, prior to the oc-
curring of such breaking way; and shall further find, that
if said walking-beam and said beam strap had been origi-
nally constructed of the best materials, and in a workman-
like manner, such breakage would not have occurred, then
their verdict should be for the plaintiff, as to the walking-
beam which broke and gave way in the manner mentioned
in the evidence."

This prayer could not have been properly granted be-
cause while it undertakes to give a recital of all the mate-
rial facts in evidence, it ignores the important fact that the
construction of the vessel and machinery was, at all times
until the completion of the work, under the inspection of
a competent person appointed by the plaintiff in conform-

ity with the terms of the contract. This person had the power to employ a skillful engineer to co-operate with him in his superintendence of the construction of the vessel and machinery, and have control over the use of material and over the workmanship, subject only to a decision by arbitration in the event of a difference of opinion between the defendant and himself. These important and material facts were set forth, for the finding of the jury, with clearness and precision in the defendant's seventh prayer in the following words:

"If the jury find from the evidence that the contract between the plaintiff and defendant companies, referred to in the agreement of counsel filed in this case, contained provision that the plaintiff company should have the privilege of placing with the defendant company, during all the time the steamer Excelsior was being constructed, a suitable and competent person to superintend her construction, and that every facility should be given to said person to inspect the work and materials at all times, and that said person should have the right to reject such work or materials as might not in his judgment be of the quality required by said contract, and that all disputes, as to the quality of said materials and workmanship, between said inspector and the defendant company, should be settled by the arbitration of a third party; and if they should further find that a person was selected for that purpose by the plaintiff company, viz., the Captain White mentioned in the evidence; and if they shall find that said Captain White did, in fact, superintend the construction of said steamer, and that every facility was given him by the defendant company to inspect said work and materials, as required by said contract as aforesaid; and that he enlisted the services of an engineer of his own selection to assist him in said inspection; and if they shall find that the walking-beams, mentioned in the evidence, contained no defects, which might not have been discovered by the

4                         v. 66.

application of a proper test, or examination, and if they do not find that any objection was made to either of said beams by the said inspector, then the plaintiff is not entitled to recover in this action, and their verdict must be for the defendant."

There is a special exception to the granting of this prayer, the exception showing wherein the deficiency consists, on the ground that it does not conform to the evidence in the cause. But this exception cannot be maintained. There is evidence of the appointment by the plaintiff, of a competent person to inspect the construction of the vessel and machinery; and of his performance of this duty, and of the facility afforded him by the defendant, by allowing him free access to its workshops and premises. Witnesses testify that he was there from day to day sometimes with and sometimes without the assistance of a skillful engineer; and there is evidence in the cause in relation to the possibility of discovering defects in the machinery by the application of proper tests, and examination.

By the terms of the contract the competent person, who acted as plaintiff's agent in supervising the construction, had the right to reject such work or materials as might not, in his judgment, be of the quality agreed upon by the contracting parties. If inferior materials or bad workmanship entered into the construction thus placed under the constant supervision and inspection of the plaintiff's agent, it must have been with the express assent, or tacit sanction, or negligence of such agent. The assent, sanction or negligence of the agent is that of the principal. *Qui facit per alium facit per se.* The apparent effect of this clause in the contract was virtually to make the plaintiff the constructor of the vessel and machinery, controlled only by the result of a reference to arbitration. The mass of material and the labor of the workshops were furnished by the defendant, but the intelligent control, which created

the structure, was, or ought to have been, exercised by the plaintiff through the agency of its suitable and competent inspector, and if the damage was caused by negligence in this respect it was contributory negligence.

There is no perceptible error in the granting of the defendant's seventh prayer; and even if there had been the slightest tendency in its phraseology to mislead the jury, such injurious result would have been prevented by the Court's own instruction, founded on the written agreement, and requiring the jury to find for the plaintiff unless they believed that the terms of the contract in regard to the specified quality of the materials and workmanship had been fully complied with. The learned Judge who presided at the trial formulated this instruction with remarkable conciseness and perspicuity, and it reads as follows:

"If the jury find the contract and specifications offered in evidence, and that the damage complained of was occasioned by a flaw in the welding of a portion of the Excelsior's walking-beam, existing therein at the time of her delivery by the defendant to the plaintiff, and that but for the same the damage would not have been incurred, then the plaintiff is entitled to recover, unless the jury shall also find that notwithstanding such flaw, said walking-beam was, in point of fact, made of the best material, and in a first-class, substantial and workmanlike manner, or in other words, that the locality and character of the flaw were such that it could not have been detected or prevented by the use of better material or workmanship."

It will be seen that this instruction entitled the plaintiff to a verdict unless the jury believed that the materials used were best in quality, and that the workmanship was first-class, as required by the terms of the contract and specifications. Whatever objection might have been made to this instruction by the defendant, had it encountered an

adverse verdict, certainly none can be maintained by its adversary in the cause. The instruction could not have been made more favorable to the plaintiff, by the employment of any phraseology. If a thing is best, how can it be better? There can be nothing beyond the superlative in excellence. To say, that the materials are best in quality, and then to say that some other materials might be better, would be tantamount to the utterance of a manifest absurdity. And the same remark is applicable to first-class workmanship. If it was first-class it could not be excelled. The special exception to this instruction of the Court that there was no evidence tending to show the materials and workmanship were first-class, cannot be sustained. There was some evidence so tending. The jury must therefore have believed that the materials and workmanship were best in quality.

If their finding was not in conformity with the evidence the Court below could, on motion, have set the verdict aside. But this Court has no control over the verdicts of juries, and, finding that the appellant has not been injured by any erroneous ruling in the Court of original jurisdiction, must affirm the judgment.

*Judgment affirmed.*

(Decided 24th June, 1887.)