ELIZABETH M. SCHAEFFER *vs.* FRANK A. BOND and
WILLIAM R. TYLER.

*Principal and Surety—Release of Surety.*

To secure a loan a mortgage on eleven lots of ground and certain
buildings in the course of erection, was executed to the lender,
who required as a condition precedent to the making of the loan
that she should be protected against loss in the premises by the
execution of a bond of indemnity. The condition of the bond,
of like date with the mortgage, was that the mortgagor should
complete the buildings and improvements by a certain day, pay
the ground rent which should fall due on said lots respectively,
until such completion, and indemnify the lender against all
mechanics' liens on said buildings. The mortgage contained a
clause requiring the houses to be insured, and the insurance
money, in the event of fire, to be paid to the mortgagee. The
mortgage provided for foreclosure in default of the payment of
the money loaned, or the interest thereon, or the ground rents,
taxes or assessments. The buildings were not completed by the
time specified in the bond, and shortly thereafter three of the
houses included in the mortgage, being still unfinished, were
burned, the mortgagor being at the time in default in the pay-
ment of the ground rents. A certain person entered into a con-
tract with, and gave security to, the mortgagor and mort-
gagee to restore the property to the same condition in which it
was before the fire, in consideration of the insurance money
being paid to him. HELD:

That as the securities had guaranteed the completion of the houses
by a certain day, and their principal had failed to keep his
engagement, and was in default, their liability for damages had
accrued, and the application by the mortgagee of the insurance
money to the restoration of the burnt buildings and giving a
certain time in which to do the work, did not release them from
their obligation upon their bond.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ROBINSON, IRVING, BRYAN, FOWLER, McSHERRY, and BRISCOE, J.

*Morton Schaeffer*, and *Benjamin E. P. Crampton*, for the appellant.

*Thomas Hughes*, for the appellees.

IRVING, J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court of Baltimore City, granting a perpetual injunction against the prosecution of any suit upon a certain bond from the appellees to the appellant, dated the 24th of September, 1887.

The bill praying the injunction avers, that on the 24th of September, 1887, the appellees, with one John Carson and Elijah J. Bond, executed a bond to Elizabeth M. Schaeffer, (the appellant,) in the penalty of nine thousand dollars, upon condition that Elizabeth M. Schaeffer should be protected from loss in the premises by the execution of the bond, which recited the loan by Elizabeth M. Schaeffer to John Carson of forty-five hundred dollars upon a mortgage of eleven lots of ground and certain buildings in the course of erection; and the condition of which bond provided that the mortgagor, John Carson, should complete the houses which were in process of erection on the mortgaged premises, fence the same, lay the pavements and put in complete order for occupancy of tenants on or before the first day of December, 1887; and that he should pay every instalment of ground rent until such completion; and also that he should indemnify Elizabeth M. Schaeffer from liens filed under the lien laws of Maryland within six months from such completion. A copy of the bond is filed with the bill.

Schaeffer *vs.* Bond and Tyler.

The bill also alleged the insurance of the property against fire, by John Carson, with provision in the policy for the payment of the insurance money, in the event of fire, to the mortgagee; and that in December, 1887, certain of the houses were destroyed by fire, and that the insurance company paid for loss under the policy the sum of $2469.18, which was properly applicable to the discharge of the obligations of the mortgagor to the mortgagee; but that without the assent or concurrence of the plaintiffs, under an agreement between Mrs. Schaeffer, John Carson, Elijah J. Bond, and a certain John Carstens, the same was applied to the rebuilding of the houses destroyed by fire; and that, by the same agreement, the time for completing the houses was extended to the first of May, 1888, and that on the 7th of February, 1888, John Carstens executed a bond to Mrs. Schaeffer, Elijah J. Bond, and John Carson in the penalty of ($3500) thirty-five hundred dollars, to secure the completion of the buildings, and indemnify against mechanics' liens thereon. A copy of that bond, which had two securities to it, is filed with the bill. The bill then charges that these facts and conduct of Mrs. Schaeffer with reference to the subject-matter and the insurance money, without their knowledge, assent, and concurrence, absolve them from further liability upon the bond executed by them; and as they understand that Mrs. Schaeffer is about to bring suit upon that bond, they pray for an injunction restraining any such suit, and for a decree cancelling the bond, and directing its surrender to the plaintiffs.

To this bill a demurrer was interposed, which was overruled, and answer was filed, and by regular proceedings the case went to final decree.

The facts essential to the decision of this case are either conceded or proven without contradiction, and are as follows: Mrs. Schaeffer lent John Carson forty-five

hundred dollars which was divided up in notes of various amounts, but all falling due at the same time, viz., on 24th of September, 1888.   Interest was payable six and twelve months from date, (viz., 24th September, 1887;) and notes were taken therefor.   To secure this loan and interest, John Carson, on the same day he gave the notes, gave a mortgage on eleven parcels of land in Baltimore City, with the buildings thereon.   These lots are described in the mortgage as leased to John Carson by Elijah J. Bond and wife.   The mortgage is made subject to the rent reserved in the lease.   It is agreed in the mortgage that the mortgagor, John Carson, and his personal representatives shall possess the property until default shall be made, and that he is in the meantime to pay the taxes, and all public charges on the property or on the money lent, and he agrees to pay, and covenants to pay, "the money and interest intended to be secured, ground rents, taxes, assessments, public dues and charges   *   *   when demandable," and then follows this condition: "But if default shall be made in the payment of the said sum of money, or if the interest that may accrue thereon, or any part of either one of them at the time limited for the payment of the same, or in any agreement, covenant, or condition of this mortgage, then the entire mortgage debt shall be due and demandable; and it shall be lawful for the said Elizabeth M. Schaeffer, her personal representatives, or Morton Schaeffer, their attorney or agent, at any time after such default, to sell the property hereby mortgaged, or so much thereof as may be necessary to pay said money and interest, and all expenses incurred in making such sale, &c."   On the same day that the mortgage was executed, John Carson executed a bond to Mrs. Schaeffer in the penalty of nine thousand dollars with Elijah J. Bond, Frank A. Bond and William R. Tyler as securities, which bond recites that it was a condition precedent to making the loan

Schaeffer *vs.* Bond and Tyler.

that this bond was to be given as well as the mortgage. The condition of the bond is "that if the said John Carson do and shall fully complete and finish the buildings and improvements now in the course of erection on the said respective lots of ground, fence in said lots, lay the pavements and put the ground and premises in complete order for occupancy by tenants, on or before the first day of December next, and also if the said John Carson, his personal representatives or assigns, shall pay or cause to be paid, any and every instalment of ground rent which shall fall due on said lots respectively under the said lease thereof, until such time as the said improvements shall be completed and the premises made ready for occupancy as aforesaid. And also if the said John Carson, his personal representatives or assigns, do and shall indemnify the said Elizabeth M. Schaeffer, her personal representatives, from and against any and every lien now exhibited and filed, or that may be exhibited or filed within six months from the completion of said improvements against said property and premises, under the lien laws of Maryland, either for work and labor done or materials furnished, and from and against all loss, injury, damage, costs, charges and expenses, which the said Elizabeth M. Schaeffer, her personal representatives or assigns, may suffer, incur, be put to, or pay for, or on account of or by reason or in consequence of any such lien or liens, or the enforcement thereof, then the above obligation to be void, otherwise to remain in full force and operation in law." The mortgage had a clause requiring the houses mortgaged to be insured, and the insurance money in the event of fire to be paid to the mortgagee, Mrs. Schaeffer.

The houses were not completed and ready for tenants by the first day of December, as the bond provided for; and on the 20th of the same month, being still unfinished, the three St. Paul street houses mentioned and

included in the mortgage were "burned up." The adjusted loss was twenty-four hundred and sixty-nine dollars and eighteen cents, ($2469.18.) In order that these burnt houses might be put back into the "same condition as before they were injured by fire," Mrs. Schaeffer, John Carson and Elijah J. Bond entered into a contract with one John H. Carstens, for the insurance money to be paid him in certain instalments mentioned in the agreement between the parties in writing and under seal, if he would restore the property to the same condition as before the fire; and Carstens' gave a bond in the penalty of thirty-five hundred dollars, with John Burns and Charles Spillman as sureties, to Mrs. Schaeffer, Elijah J. Bond and John Carson, conditioned for the repair and completion of the burnt houses on or before the first day of May, 1888, and for the protection of the obligees of the bond and their personal representatives and assigns, against all liens for work, labor, or materials, to be filed within six months from the completion of the improvements, and all losses from the enforcement of any such liens.

The appellees, plaintiffs below, contend that the extension of time for the completion of the buildings, and the non-application of the insurance money to the mortgage debt, entirely absolves them from any liability on the bond of indemnity which they gave Mrs. Schaeffer, and the learned Judge of the Circuit Court seems to have thought that contention sound, as he granted a perpetual injunction against any suit on the bond.

The appellant insists that there has been no such extension of time for the completion of the buildings as absolves the appellees from liability under their bond; nor any application of the insurance money to their prejudice. They rely on the fact that their right of action on the bond had fully accrued prior to the fire, by reason of the non-completion of the houses for occupancy by

the first of December, 1887, for which their bond had provided; and because of the failure of John Carson to pay the ground rent, which is admitted to have accrued and fallen due on the first of December, 1887.

It is universally accepted law that sureties are only to be held to the letter of their contract; and their liability is not to be enlarged beyond their strict engagement. *Brandt on Suretyship*, sec. 79. Looking to the bond of John Carson and his securities, to Mrs. Schaeffer, it very clearly appears that the securities never undertook to be sureties for the mortgage debt, nor any part of it. No default in respect to it, or any thing which affected the mortgage debt, brought any liability on them for it. Their undertaking was purely collateral to it. They became security that the buildings mortgaged should be completed by a specified time; for the fencing and paving of the premises; for the payment of ground rent; and that Mrs. Schaeffer should suffer no loss by reason of mechanics' liens on the property. None of these are mentioned in the mortgage except the rent. The mortgage gives no hint that the buildings mentioned in it are uncompleted structures. Not being securities for the mortgage debt these securities had no interest in the insurance money, or right to demand its application to the payment of the mortgage debt. All controversy therefore, over the propriety of the application of the insurance money to the restoration of the burnt buildings is wholly eliminated. It is very certain that what was done with the insurance money wrought no injury to them, but must have benefited them to some extent.

Equity always holds a surety discharged if the contract is materially changed without his knowledge and consent, because he has guaranteed the execution of a specific agreement, and a new agreement cannot be substituted for it without his assent. *Adams Eq.*, 106;

Schaeffer *vs.* Bond and Tyler.

*Mayhew vs. Boyd,* 5 *Md.,* 102; *Yates vs. Donaldson,* 5 *Md.,* 389; *Oberndorff, Trustee vs. Union Bank of Baltimore,* 31 *Md.,* 126; *George vs. Andrews and Wife,* 60 *Md.,* 34; *Claggett, et al. vs. Salmon,* 5 *G. & J.,* 352. In this last case, Judge STEVENS says: "It is because the creditor has disabled himself from fulfilling the obligations and duties he owes to the surety that he is released from responsibility." The question now arises, was that which was done such an act as disabled the principal, John Carson, from fulfilling his obligations and duties to his sureties? Was the contract made with Carstens, the builder, a new contract substituted for the old, which injuriously affected these securities? We do not think this a case contemplated or covered by the authorities relied on. The securities had guaranteed the completion of certain houses ready for occupancy by the first day of December, 1887. Their principal had failed to keep his engagement, and was in default. Their liability for damages had accrued; and they were immediately suable as the buildings were not completed on the first day of December, 1887. Mrs. Schaeffer had not sued, and it may be reasonably inferred, that she had not done so because it could not be known how much she was injured by the default until she knew how long she had to wait for them to be finished. It was winter, and it is a matter of common knowledge that brick work cannot be rapidly and constantly done in that season. The fire came and rendered it certain that there would be long delay. It was an act of God retarding the completion of the work. The duty of Carson to his sureties was, of course, to complete the work as quickly as he could; for the longer the houses remained unfinished, the greater would be Mrs. Schaeffer's claim for damages, it may be reasonably supposed. He employed Carstens to work for him, and restore the burnt buildings to their condition when the fire came. Carstens covenanted to restore by the first of

May, the agreement therefor being made in February. Carstens gave bond and security for the rebuilding by the time agreed on, and covenanted therein to secure against any mechanics' liens, thereby, certainly indirectly securing the securities of Carson against loss thereby as to some, at least, against which they had undertaken for Carson. In agreeing that the insurance money might be used in restoring the burnt houses, and that the builder might have till May to do the work, she was certainly, not expressly, nor by any reasonable implication, releasing Carson and his securities from their default in not having the buildings completed by the first day of December, nor by the 8th of February, when the agreement for rebuilding was made. Carson was not thereby disabling himself from fulfilling his contract. That was already broken, and he was more than two months in default in respect to it. This agreement for rebuilding was but a commencement by Carson to discharge his duty to his bondsmen. That agreement for the restoration of the burnt buildings was not intended to take the place of the old contract. By it they were only to be brought back to the condition they were in when the fire came. They would still be unfinished, and require completion. Of course, the sureties would not be bound for the consequences of unreasonable delay assented to by Mrs. Schaeffer; but we cannot *assume* that this agreement did give unnecessary and unreasonable time to do the work which was required by it to be done. We have no proof on the subject; and, if there was, that question is not properly cognizable now and here. That would be a subject of inquiry upon a suit on the indemnity bond. We have only to deal with the injunction, and to say if there was proper ground for it. It is very clear that the agreement with Carstens did not affect, or release the defaults which had already occurred. Ground rent falling due on 1st of December, was not paid accord-

Schaeffer *vs.* Bond and Tyler.

ing to the engagement of the bond. This new agreement, providing for the restoration of the burnt buildings to their condition when burned, certainly could not affect the payment of the ground rent remaining unpaid on the first of December preceding, nor in any way disable Carson from paying it, or prevent his being immediately sued for it. Mrs. Schaeffer in no way estopped herself, thereby, in respect to it; for the agreement for the restoration of the burnt houses had no reference to the rent, but was confined to the rebuilding; and Carson's liability for the rent accrued and mechanics' liens already fastened on the property was not disturbed, nor his *ability* to pay in anyway diminished; for he was to furnish no money to the builder, who agreed to do it all with and for Mrs. Schaeffer's insurance money. No indulgence having been given Carson in respect to those defaults which had already occurred, we are at a loss to find any justification for the decree perpetually enjoining suit on the bond of the 24th September, 1887. Finding, upon the whole case as presented, there was error in granting the decree perpetually enjoining Mrs. Schaeffer from suing the appellees, we have not found it necessary to consider the technical question whether the demurrer to the bill was properly overruled. The final determination of the Court being in our judgment erroneous, the decree will be reversed, and the bill must be dismissed.

*Decree reversed, and*
*bill dismissed.*

(Decided 19th June, 1890.)