TRUSTEES OF THE SEVENTH BAPTIST CHURCH
*vs.* ANDREW & THOMAS AND THE AMER-
ICAN BONDING COMPANY.

*Builder's contracts; variation; architect's certificate.   Evi-
dence; motion to strike out; non-reversible
error.   Bondsmen's liability.*

The ruling of the lower Court upon a motion to strike out
evidence presents no reversible error when the action of the
Court could in no way affect the conclusion reached by the
Court of Appeals.                                  p. 537

Where a building contract called for lime-mortar plaster, the
contractor's bond is not liable for damages due to the use of
a different kind of plaster used without the surety's consent.

p. 540

The liability of a surety is created entirely by his contract,
and is strictly confined and limited to its obligation; no mate-
rial change can be made without his consent.      p. 540

Where a building contract provides that the decision of the
architect shall be final and conclusive of all matters sub-
mitted to him, the owner can not recover from the contractor
for damages for defective work, when the architect had
reported that it had been done to his satisfaction.     p. 541

The word "work" as generally used in building contracts,
applies to the product of labor and material combined which
terminates in the execution of the contract, and applies to all
work done under the contract.                     p. 543

*Decided June 22nd, 1911.*

Appeal from the Superior Court of Baltimore City
(NILES, J.).

The case was argued before BOYD, C. J., BRISCOE, PEARCE, PATTISON and URNER, JJ.

*S. S. Field* and *Alfred Bagby,* Jr., for the appellants.

*Edward Duffy,* for the appellee.

BRISCOE, J., delivered the opinion of the Court.

On the 2nd day of August, 1907, the appellant brought suit in the Superior Court of Baltimore City against Andrew & Thomas, contractors, as principals, and the appellee, as surety on a bond, conditioned for the faithful performance of a building contract for the erection and construction of a church at the northwest corner of North avenue and St. Paul street, in the City of Baltimore.

On the 25th of September, 1909, a judgment was entered in favor of the defendants, Andrew & Thomas, on a plea of discharge in bankruptcy, and the case was subsequently tried against the surety, the American Bonding Company of Baltimore City, the appellee here.

The particular breach of the bond assigned by the amended declaration is that Andrew & Thomas, the principals named in the bond did not do and finish the work on the church according to the plans and specifications in the contract, in that * * * they * * * did defective work and used improper materials in plastering the church; that the plastering became loose, a part of it fell, and other parts thereof became, and were liable to fall at any time, and that the plaintiff was compelled to remove the defective plaster and replace it, with good and proper plaster at a large cost and expense.

The bond, contract, specifications and a bill of particulars were filed with the amended declaration and appear in the record.

To this declaration the defendant pleaded nineteen special pleas, and to these were interposed in turn by the plaintiff and defendant, numerous demurrers, replications and rejoin-

ders, and finally resulted in twenty-six issues in form being joined, but which, as stated by the appellant in its brief, actually and in fact can be treated as six issues.

We have examined the voluminous pleadings, as set out in the record in this case, with considerable care, and we find no reversible error in the rulings of the Court thereon. None were seriously urged at the hearing of the case in argument, and none are pointed out or insisted upon in the appellant's brief.

The principal questions before us for review are presented by a single exception, and they appear from the rulings of the Court in granting the defendant's motion at the close of the testimony upon both sides to strike out the testimony of the witness Garrettson, which had been admitted in the course of the trial subject to exceptions, and in granting the defendant's six prayers.

In the view we take of the case, the ruling of the Court upon the motion to strike out the witness Garrettson's testimony becomes unimportant, because neither its admission nor rejection would reflect upon the conclusion we have reached upon the record before us.

Nor do we deem it necessary to discuss or consider all the questions presented by the very able and carefully prepared brief of the counsel for the appellant, because we are of the opinion that the Court below was entirely right upon the whole proof in granting the defendant's first prayer, which instructed the jury that there was no legally sufficient evidence under the pleadings in this case to show an indebtedness by the defendant to the plaintiff under its bond, and their verdict must be for the defendant.

The substantial facts, as disclosed by the record, appear to be as follows: The contract price for the work, materials, construction and erection of the church, was $52,550.00, and was to be paid in four payments only upon the certificate of the architect; the first three of $11,750.00 to be paid as one-fourth, one-half and three-fourths of the work was completed, and the remaining fourth and final payment of

$17,300.00 was to be made within thirty days after the architect had certified that the entire work contemplated by the contract had been wholly completed and the building turned over by the contractors to the owner, and before each of the payments the architect should also certify in writing that all the work upon the performance of which the payment was due had been done to his entire satisfaction.

It appears from the evidence that the first, second and third payments under the contract was paid by the appellant to the contractors upon certificates of the architect.

On December 20, 1905, the appellant wrote the appellee the following letter:

"GENTLEMEN:

Messrs. David M. Andrew and George H. Thomas have this day notified us that they have completed the work under their contract with us dated December 16th, 1904, for the faithful performance of which you are surety, see bond No. 173826.

We hereby give you due notice, as provided in lines 53, 54 and 55 of said bond, that we will make the last payment due Messrs. Andrew and Thomas under said contract in about thirty days from this date.

Yours very truly,

By CHARLES T. BAGBY, *President."*

On January 1, 1906, the appellants took charge of the church, and it was used for church purposes until the first day of March, 1907, when the ceiling of the main auditorium of the church was condemned by the Inspector of Buildings of Baltimore as a menace to the safety of persons and property, in that the plastering on the ceiling was cracked all over, very loose and portions of it had already fallen."

It appears that the final payment, amounting to $18,-776.16 was paid the contractors on the first day of February, 1906, as shown by their receipt.

"BALTIMORE, MD., February 1, 1906.

Received of the Trustees of the Seventh Baptist Church of Baltimore Eighteen thousand, seven hundred and seventy-six dollars and sixteen cents in full settlement of all claims and demands growing out of or connected with the erection of the church at St. Paul street and North avenue, and remodeling the chapel in the rear thereof under contract dated the 16th day of December, 1904, or otherwise. This receipt is to cover all charges for extra work.

DAVID M. ANDREW,
GEO. H. THOMAS.

Test as to both:

S. SCOTT BECK."

While this payment was made without the final written certificate of the architect, he testified that he gave his approval of the plastering and reported that the plastering was a first-class job and was done in accordance with the contract.

The original specifications as to plastering provided for the use of lime mortar plaster, but this was changed by the sub-contractor Litzinger with the approval of the architect to what is known as ivory or hard wall plaster, being a patent plaster with a sand coat finish. There was no specification for the installation of the patent plaster, and this change or alteration of the contract was made without the written order of the owner and without the consent of the surety. By the fifth paragraph of the contract it was provided "that no alteration should be made in the work shown or described by the drawings and specifications except upon the written order of the owner, and such addition or omission in the work required by the owner shall be carried out by the contractors without making void or in any manner affecting the contract."

The substantial ground of the plaintiff's action here is that the patent plaster had not been mixed according to the manufacturer's directions by the sub-contractor, and that it fell for this reason. While the plaintiff's testimony tended

to show that there was too much sand put in the plaster, it failed to show that the contractors were responsible for the defective condition of the plastering. On the contrary, the evidence shows that the roof of the church was supported by two 70-foot trusses of wood, which ran from the front of the church to the rear of the church and which were supported at each end by steel columns. These trusses had sunk and "had to be jacked up" and tightened before the plastering could be replaced.

But even if it be conceded that the alteration and change of the contract without the written order of the owner would bind the contractors in his case it was not made in a manner to bind the appellee, because the bond guaranteed the installation of lime mortar plaster called for by the contract and specifications and not that of a different character of plaster, a patent plaster, such as was adopted and put in the church.

In *Wehr.* v. *St. Matthews'* Cong., 47 Md. 177, it is said, it is perfectly well settled that a surety has the right to stand upon the very terms of his contract, and if such contract be altered or varied in any material point without his consent, so as to constitute a new agreement varying substantitally from the original, he is no longer bound.

In *Plunkett* v. *Sewing Machine Co.,* 84 Md. 532, it was said, the liability of a surety or a guarantor is created entirely by his contract, it is therefore strictly confined and limited to his contract. No material change can be made in them without his consent. All Courts have maintained that his responsibility cannot be extended by construction beyond the limits which he has himself fixed. *Leppert* v. *Flaggs,* 101 Md. 74; *George* v. *Andrews,* 60 Md. 26; *Lake* v. *Thomas,* 84 Md. 608; *Schaeffer* v. *Bond,* 72 Md. 501; *Mayhew* v. *Boyd,* 5 Md. 102; *McConnell* v. *Poor* (Iowa), 52 L. R. A. 312; *Gibbs* v. *Girardville,* 195 Pa. St. 396.

Besides this, it will be seen that by paragraph 4, of the contract the decision of the architect, on all matters referred to him, should be final and conclusive.

In this case the architect gave his approval of the plastering. He testified: "I did make a report, stating that the plastering was well executed and a very nice looking piece of work."

Mr. Bagby, the chairman of the board of trustees of the plaintiff church, testified, "that the architect reported, except as to some small matters, that the entire work had been done to his satisfaction. He reported that the plastering was a first-class job and had been done in accordance with the agreement." There was no allegation or proof of fraud, collusion or mistake on the part of the architect, as to his action in this regard, and his report was accepted as conclusive, at the time of the completion of the building and at the final payment by the appellant, that the work had been performed according to the contract. The building was accepted by the trustees and used for church purposes until the first day of March, 1907, when the ceiling of the main auditorium of the church was condemned by reason of the defective condition of the plastering. It was not until the 19th day of March, 1907, that notice was given the appellee of the alleged breach of the contract and a demand to have the plastering replaced.

We think, upon the whole record, the case was devoid of legally sufficient evidence to permit the plaintiff to recover under the pleadings and evidence in the case, and the case was properly withdrawn from the jury by the defendant's first prayer. As this conclusion disposes of the case, it will not be necessary for us to pass upon the other granted prayers or the other questions represented on the record.

For the reasons stated, the judgment will be affirmed, with costs.

*A motion for re-argument of this case, was overruled on January 17th, 1911.*

BRISCOE, J., delivered the opinion of the Court.

A motion has been filed and submitted on behalf of the appellant for a re-argument of this case. We have carefully

examined the motion and the appellant's brief in support of it, and we find no reason to disturb the conclusion reached by us as heretofore announced in an opinion filed in the case.

The reason for the motion is stated to be: First, that the principal point upon which the Court decided the case is one that was not passed upon by the Court below, was not discussed in the appellant's brief or oral argument, and is a point upon which the Court fell into error by overlooking a provision of the contract. Second, that the change from lime mortar plaster to ivory hard wall plaster was a change of material and not of work and is not covered by section 5 of the contract, which provides that no alteration should be made in the work shown or described by the drawings and specifications except upon the written order of the owner. Third, that the owner authorized this change in writing, and Fourth, the Court was in error in holding that the testimony does not show that the contractors were responsible for the defective condition of the plastering.

As to the first objection, we need only say, that it will be seen, upon an examination of the opinion itself, that the decision of the case was not based upon any single ground, but after stating a number of reasons for our conclusion, we said, upon the whole record, the case was devoid of legally sufficient evidence to permit the plaintiff to recover under the pleadings and evidence and the case was properly withdrawn from the jury, by the granting of the defendant's first prayer.

The conclusion reached by us upon this prayer, for the reasons we gave, disposed of the case, and made it necessary for us to consider the other prayers. The defendant's second prayer was a demurrer to the evidence, and properly instructed the jury there was no legally sufficient evidence, under the pleadings, to show an indebtedness by the defendant Bonding Company to the plaintiff under its bond filed in the case, and directed a verdict for the defendant.

As a matter of fact, however, the point or ground here objected to was discussed both in the oral argument and upon the appellee's brief, under point 3, page 14 of the brief.

The second and third objections will be considered together. By reference to the 5th paragraph of the contract, it will be seen, that the contract provides, in terms that no alteration should be made in the *work,* shown or described by the drawings and specifications except upon the written order of the owner.

Now while it is conceded, that as to the plastering work, ivory hard wall plaster had been substituted for lime and mortar plaster, without the written order of the owner it is contended that this alteration or substitution was a change of material and not of work, and is not covered by section 5 of the contract.

The word work, obviously, has a very broad and general meaning but is defined as applied to contracts to be the product of labor and material combined which terminates in the execution of the contract, and applies to all the work done under the contract. This meaning of the word, it will be seen, runs through the whole contract and specifications in this case and it is in this sense that the word is here used. This meaning is supported by certain expressions in the contract itself for example, "Take down the *work* which the architect shall condemn," "The contractor shall cover and protect the *work* from damage by the weather," "The contractor shall maintain insurance on the *work.*" And in the specifications will be found similar expressions, to wit, "The contractor shall have some competent person on the work," "The contractor must protect his work," and "Work shown on the drawings." It is, therefore, clear, we think, that the fifth paragraph of the contract refers to the plastering work, and a change of materials was a change of this work.

The paragraph from the specifications under the head of changes relied upon by the appellant refer to extra work, and is the usual provision in building contracts. There was no written order of the owner as required by the contract to

make the alteration as agreed upon.   The approval of the change by the architect of the building could not bind the surety the appellee here.   The architect, Glidden, was in no sense the agent of the church for this purpose and could not act as agent for the church except under the contract and this clearly required a written order of the owner.   This question is fully discussed in the opinion and need not be further considered here.

The fourth objection is also covered by the opinion.   By paragraph 4 of the contract it is provided, that the decision of the architect on all matters referred to him, shall be final and conclusive.   In this case, the architect gave his approval of the plastering, and his decision is shown by the opinion filed in the case to be conclusive between the parties.   *Filston Farm Co.* v. *Henderson Co.,* 106 Md. 335; *Lynn* v. *B. & O. R. R. Co.,* 60 Md. 415; *Pope* v. *King,* 108 Md. 44; 16 *L. R. A.* (U. S.) 489; *Smith & Sons* v. *Jewell,* 104 Md. 270; *Potomac Steamboat Co.* v. *Harlan,* 66 Md. 42.

We have carefully reviewed the case and discover no reason for granting another argument, as we think the case is fully covered by the opinion, and for the reasons stated the motion for a re-argument will be overruled.

*Motion overruled, with costs.*