JOHN PRODIS *v.* PETE CONSTANTINIDES
[No. 13, April Term.]

*Decided May 3rd, 1934.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*H. Harry Rosenberg*, with whom were *Samuel S. Levin* and *Ben B. Sellman* on the brief, for the appellant.

*William Lovitt* and *Harry Herman*, submitting on brief, for the appellee.

PARKE, J., delivered the opinion of the court.

The appeal on the record at bar is from the decree of the chancellor which refused to enter a deficiency judgment against a mortgagor in favor of the mortgagee who had foreclosed a chattel mortgage, the foreclosure sale having failed to pay the mortgage indebtedness to the extent of $846. The facts in parol were disputed. After a review of all the testimony, the court is in agreement with the conclusions of the chancellor on the facts and the equitable principles to be applied. No statement will be made of the testimony, nor would its analysis be of lasting interest nor required in vindication of the findings of fact. The proof is manifest, and what happened may be briefly stated.

Jordon Prodis was the lessee of certain premises in Baltimore City, where he had a confectionery store. He sold his business, equipment, and stock in trade to Pete Constantinides, who paid something on account, and secured the payment of the residue of the purchase price by giving to the seller, on October 14th, 1930, a chattel mortgage upon all of the "stock, merchandise, good will, fixtures and utensils" of this store. The mortgage debt was covenanted to be paid in specified monthly sums, beginning at the end of the first month after date of the mortgage. It was agreed that the mortgagor was to possess the mortgaged chattels until default, when a consent decree was authorized in accordance with the local statute in force in Baltimore City (Acts of 1898, ch. 123, secs. 720-732).

Two days later the seller assigned the term of the lease to the buyer and mortgagor, Pete Constantinides, who, on the same day, October 16th, 1930, transferred all his interest in the term of the lease and in the goods and chattels in the store, including those covered by the chattel mortgage, to his son-in-law, Terry Canaras, upon the latter's assumption of the debt for which the chattel mortgage was given.

By barter and sale, Canaras, with the consent of Prodis, disposed of all the goods and chattels which were in the store at the time the chattel mortgage was taken, except several mirrors, a fan, scales, and a few other articles. The goods and chattels removed were replaced by other and more desirable equipment; and the mortgagee and purchaser agreed that these subsequently acquired articles would be subject to the chattel mortgage, and the mortgagee advanced one hundred dollars to pay on account of the purchase price of the new equipment.

From October, 1930, Canaras conducted the business on the demised premises until business conditions compelled him to stop. The first installment, due on November 14th, 1930, and all the other sixteen payments on the mortgage debt, amounting to $837.40, were made by Canaras by checks drawn to the order of Prodis. Business fell off, and in the summer of 1932 Canaras could not make the stipulated payments required by the mortgage, and, on his default, asked, and obtained of Prodis, a gratuitous extension for nine months of the time for the monthly payments under the covenant of the mortgage. At the end of this period, the payments were not resumed; and Prodis foreclosed his chattel mortgage. The trustee named under the consent decree provided for in the mortgage advertised not only the goods and chattels which were on the premises when the mortgage was given but also those which Canaras had later purchased. The court granted an injunction restraining the trustee from selling the subsequently acquired goods and chattels.

The trustee then sold the goods and chattels which remained and were intended to be included in the mortgage

An account was stated, which showed that the goods and chattels sold had failed to pay the mortgage debt in the amount of $846, with interest from May 18th, 1933. The audit was ratified, and the mortgagee filed his petition to obtain a judgment against Pete Constantinides, the original mortgagor, for a judgment for this deficiency. Charter & P. L. L. of Baltimore City (1927) sec. 731A, p. 440; Code of Public General Laws, art. 21, sec. 50, art. 16, sec. 232, art. 66, sec. 24.

From these facts and circumstances, it is clear that the purchaser of the mortgaged chattels had assumed and agreed to pay the mortgage debt, and that this assumption of the mortgage debt by the purchaser was accepted and ratified by the mortgagee. The mortgagee was, accordingly, bound to treat the mortgagor as a surety, and to do nothing to impair the value of the mortgagee's security. Notwithstanding this relation, the mortgagee, with full knowledge of the transfer of the mortgaged property to the purchaser, agreed that the purchaser should dispose of the major and valuable part of the mortgaged chattels, without obtaining the consent of the mortgagor. With the consent and co-operation of the mortgagee, the purchaser then disposed of certain mortgaged chattels, and thus seriously impaired the security for the payment of the mortgage debt, without the knowledge or consent of the surety. Since these acts so done materially affected the actual relation between the mortgagor and the mortgagee to the prejudice of the former, who had become a surety of a debt on which the purchaser had been accepted as principal, the mortgagor was discharged from his personal liability to the mortgagee for the mortgage debt, and the mortgagee lost his right to obtain a decree *in personam* against the original mortgagor. In so deciding, the chancellor enforced the rule that where the holder of an obligation which is secured by a chattel mortgage has discharged a valuable part of the chattels mortgaged, without the knowledge or consent of the mortgagor, who had become by agreement a surety on an obligation under which he had been the principal debtor, the

mortgagor, in the position of a surety, is discharged of his personal liability for the debt. The established doctrine is that any dealing with one who is the principal debtor, whereby the contract is materially varied or changed, operates to discharge the surety. *George v. Andrews,* 60 Md. 26, 33-35; *Warner v. Williams,* 93 Md. 517, 521, 49 A. 559; *Mayhew v. Boyd,* 5 Md. 102, 110; *Asbell v. Marshall Bldg. & Loan Assn.,* 156 Md. 106, 111, 143 A. 715; *Seventh Baptist Church v. Andrew & Thomas,* 115 Md. 535, 540, 81 A. 1; *Jones on Mortgages* (8th Ed.) secs. 920, 924, 839, 896.

According to the facts as found by the court, the mortgagee not only consented to a material reduction of the mortgage security to the prejudice of the surety, but his action was based upon the agreement between himself and the principal to substitute for the property disposed of by the principal other and more valuable chattels acquired by the principal. So, the case here is not simply a disposal of a part of the mortgaged chattels to the loss of the surety, but, in addition, the change of the contract by a change in the subject matter. See *Freaner v. Yingling,* 37 Md. 491. If this were merely a case of the obvious prejudice to a surety that had resulted from a surrender by the creditor of his lien upon the mortgaged chattels, the surrender would discharge the surety to the extent of the value of the mortgaged chattels upon which the mortgage lien had been surrendered. 2 *Williston on Contracts,* secs. 1232, 1234, 386; *Freaner v. Yingling,* 37 Md. 491, 499.

In the cause at bar, the mortgaged chattels which formed the security for the debt were bargained and sold at the time the original contract of mortgage was made, and it is upon the covenant in the mortgage that the mortgagor was to pay the mortgage debt that the mortgagee's right to a judgment for the deficiency against the mortgagor is found. An agreement by the mortgagee with the purchaser, whereby, without the consent or knowledge of the mortgagor, the mortgagee surrendered a part of the security of the original mortgage and accepted, in

38

substitution therefor, the purchaser's agreement that the residue of the mortgaged chattels and the chattels bought by the purchaser in substitution for the chattels sold would be the mortgagee's future security for the debt, was a change in the surety's contract and an alteration of risk which discharged the surety from any obligation to pay the mortgage debt. *Polar v. Everett*, L. R. 1 Q. B. D. 669; 2 *Williston on Contracts*, secs. 1239, 1240; *Museum of Fine Arts vs. American Bonding Co.*, 211 Mass. 124, 127, 97 N. E. 633.

The materiality of this change in the contract is further evidenced by the consideration that the statute under which a decree for the amount of the deficiency is authorized contemplates "a sale of the whole mortgaged property"; and the value of the security surrendered was apparently in excess of the present deficiency under the foreclosure.

For the reasons here assigned, the court is of the opinion that the circumstances of this record call for an affirmance of the decree.

*Decree affirmed, with costs to the appellee.*