# TURFERS, INC., ET AL. *v.* FREDERICK PRODUCTION CREDIT ASSOCIATION

[No. 336, September Term, 1971.]

*Decided June 7, 1972.*

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, SINGLEY, SMITH and DIGGES, JJ., and RICHARD P. GILBERT, Associate Judge of the Court of Special Appeals, specially assigned.

*Joseph W. Powers*, Jr., for appellants.

*K. Thomas Everngam* and *Benjamin B. Rosenstock* for appellee.

SMITH, J., delivered the opinion of the Court.

Appellant, Turfers, Inc. (Turfers), encountered reverses in its attempt to market a certain type of Bermuda grass. When appellee, Frederick Production Credit Association (Production Credit), then attempted to collect the sums it had loaned Turfers, the latter corporation, certain of its individual stockholders, and their spouses mounted a two pronged attack by way of defense. That attack will prove as unsuccessful in this Court as it did in the trial court. There, Judge Wise, who heard the case without a jury, entered judgment in favor of Production Credit against Turfers and the individuals. He dismissed the counterclaim.

Production Credit is a farmers' co-operative lending association affiliated with the U.S. Farm Credit Administration. It makes loans to farmers for agricultural purposes in Carroll, Frederick, Montgomery, and Washington Counties. Its stockholders are participating farmers who are borrowers.

In the fall of 1968 representatives of Turfers approached Production Credit relative to a loan. Under date

of November 21 an application was forwarded to one of the officer-stockholders with the advice:

> "Please fill in the loan requested section as to gross amount. Out of this would come 5% association stock and a 1% fee. The net can be advanced as needed."

An application ultimately was submitted. It showed the following for the desired funds:

| | |
|---|---:|
| New equipment | $ 6,000 |
| Operating capital | 40,000 |
| Liquidation of existing loans | 29,000 |
| Membership stock | 4,000 |
| "Fee—misc" | 1,000 |
| **TOTAL** | **$80,000** |

The loan was to mature December 26, 1969. The application called for six monthly payments of $8,000 each beginning on July 1, 1968, payable from sales of turf. The loan was approved upon the condition that three officer-stockholders of the corporation execute the note as co-makers and that they be joined in that regard by their wives.

A demand note in the amount of $80,000 was executed on December 12, 1968. As the trial court put it, "As a result of mutual agreement, the advance of these monies was to be in increments as requested by the corporation, in order to save interest on those portions of the loan not needed immediately." A total of $60,000 was paid directly to Turfers by Production Credit. The first advance was on December 31, 1968, and the last on April 10, 1969. At the time of each advance the corporation was also debited with a 5% charge for purchase of stock in Production Credit and certain loan fees and costs.

As early as April discussion began to take place concerning the possibility that the full amount of the loan would not be drawn. Under date of April 16 the assistant manager of Production Credit advised the secretary of

Turfers that if additional funds were not drawn it would be possible to reduce the monthly payments to $6,500. There is some dispute as to whether a request for the remaining money was made by Turfers prior to July 1, 1969. The trial judge made no specific finding of fact on that point. On August 5, 1969, Production Credit notified Turfers that its request for an extension had been approved and that its payments would be in the amount of $6,400 monthly beginning July 1, 1969. No payments were ever made. Judgment by confession was entered on September 22, 1969. The judgment was vacated under Maryland Rule 645 b and the cause was placed upon the trial docket.

Turfers brought a counterclaim against Production Credit. It claimed a breach of contract by Production Credit when it failed to loan the full $80,000. For a second count it claimed that Production Credit falsely represented that it would loan $80,000 to Turfers when it "never intended to make the loan."

In this Court the appellants contend (1) (a) that the confessed judgment note should not be considered because it "was not made an exhibit in the pleadings nor was it admitted at the trial for any other purpose than to corroborate agreements between [Turfers] and [Production Credit]," and (b) that there was no consideration for the execution of the note by the individuals; (2) that the individuals on the note were discharged from their obligations on it because (a) Production Credit reduced the principal and the monthly payments without the consent of the individual makers, (b) "because [Production Credit] unjustifiedly impaired the collateral for the loan commitment of Eighty Thousand Dollars ($80,000) by not releasing some of it for purposes of satisfying the obligation," and (c) because of material alteration in the terms of the obligation; and (3) that because of breach of contract by Production Credit in not making additional advances when requested it is liable to Turfers. A fourth point was raised which was relevant only if we found there was no liability on the note.

## I

### (a)

The original note was filed with the initial papers in the proceeding. The note was offered and admitted into evidence. The record at that point is:

> "Mr. Powers: I would like to object to it on one basis, if I may. That would be this. I think it goes to the weight, but I don't think this suit is on the note so therefore I wouldn't object to it for any other reason.
>
> "The Court: It would be admissible evidence. I think the weight would be the only question. It has been duly marked as Plaintiff's Exhibit No. 3, I believe?
>
> "Mrs. Bussell [The court stenographer]: No. 4.
>
> "The Court: No. 4."

Accordingly, the contention is without merit.

### (b)

The argument of appellants if accepted would rule out liability on any note by an accommodation indorser. In *Penrose v. Canton Nat. Bank,* 147 Md. 200, 127 A. 852 (1925), our predecessors considered a requested prayer which "would have directed the jury to find for the defendant on each note if his indorsements were found without any consideration passing to him." Chief Judge Bond there said for the Court:

> "It would seem clear that an instruction so worded could not be given in a suit against an accommodation indorser. Its effect would be to rule that an accommodation indorser could never be sued, for he always indorses without consideration passing to him."
>
> *Id.* at 213.

An accommodation maker should be in no more exalted

position than an accommodation indorser. An accommodation maker is' liable on an instrument to a holder for value even though such holder knew him to be only an accommodation party. *Crothers v. National Bank,* 158 Md. 587, 592, 149 A. 270 (1930).

Paraphrasing *Gordon v. State National Bank,* 249 Md. 378, 384, 239 A. 2d 915 (1968), consideration can be found in the circumstance that execution of the note as comakers by the officer-stockholders and their wives was intended to induce Production Credit to make the loan to Turfers. Without such execution there would have been no loan. This was of sufficient moment to the individual appellants to cause all of them to sign. *Cf. Katski v. Boehm,* 249 Md. 568, 578, 241 A. 2d 129 (1968) ; *Blacker v. Bukowitz,* 219 Md. 171, 172-73, 148 A. 2d 382 (1959) ; and *Keiner v. Commerce Trust Co.,* 154 Md. 366, 372, 141 A. 121 (1927). Accordingly, the contentions of the individual appellants that they should be relieved of liability because of lack of consideration must fail.

## II

### (a)

In essence, the appellants contend that because the amount of principal was reduced below that originally contemplated and because the monthly payments were reduced, the individuals are discharged from liability. They cite *Hunter v. Van Bomhorst,* 1 Md. 504 (1851) ; *Prodis v. Constantinides,* 167 Md. 33, 172 A. 286 (1934) ; and *Ford v. Loret,* 258 Md. 110, 265 A. 2d 202 (1970), for the proposition that in Maryland "an extension of time for payment without the permission or consent of parties to a note which would thereby prejudice them would discharge them from any obligation to pay." They then go on to recite the prejudice that they say has arisen. *Prodis* involved the purchaser of mortgaged chattels who assumed and agreed to pay the mortgage debt. This Court said when this was accepted and ratified by the mortgagee, the latter was then bound to treat the

mortgagor as a surety. The other two cases involved indorsers. The Maryland rule is that an accommodation maker is not discharged by an extension of time granted by the payee to the principal, even where the payee knows that he is an accommodation maker. *Nussear v. Hazard,* 148 Md. 345, 353, 129 A. 506 (1925); *Vanderford v. Farmers' Bank,* 105 Md. 164, 166, 66 A. 47 (1907); and *Yates v. Donaldson,* 5 Md. 389, 402, 61 Am. Dec. 283 (1854). The parties here were comakers, not indorsers.

### (b)

Appellants rely upon Code (1964 Repl. Vol.) Art. 95B, § 3-606(1)(b) which provides that a holder discharges any party to the instrument to the extent that without such party's consent the holder unjustifiedly impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse. There is no spelling out in the argument as to what collateral is deemed to have been impaired. One might draw the inference from the argument made that "collateral" was equated by the appellants with the financial health of Turfers. *See 3 Anderson Uniform Commercial Code* §§ 3-606:8, 3-606:9 (2nd ed. 1971) for what does and does not constitute an impairment of collateral. We find no merit in this contention of appellant.

### (c)

The argument of the appellants here is that "there was a material alteration in the terms of the obligation which may have been imposed upon them on the face of the note, because the note is unconditional on its face, yet they were held accountable by the Court for matters which clearly extend themselves beyond what was on the face of the note and subsequently were debited for stock purchases in [Production Credit] and additional loan fees, none of which reflect themselves on the face of the note but were the subject of collateral agreements between [Turfers] and [Production Credit]." They cite as authority for their contention Code (1964 Repl. Vol.) Art. 95B, § 3-407 (1), a section concerned with physical

alteration of an instrument. *See 2 Anderson, op. cit.* § 3-407:9 as to what constitutes material alteration. Appellants miss the point entirely. Production Credit loaned Turfers $60,000 plus the amount necessary for fees. The loan application spelled out what part of the $80,000 loan would be for stock and what part for fees. Therefore, there was no alteration in the terms of the loan.

## III

Relative to appellants' cross-claim, the trial judge said in pertinent part:

"Under the breach of contract count, the defendants contend (1) that the commitment of the Plaintiff was a binding contract to loan the full $80,000 and (2) as a result of refusal to advance the final portion of the loan the defendant corporation suffered damages through its inability to exploit its business prospects. * * * Assuming, however, that there was a contract the defendant must still show the resultant damages claimed by the second contention. It would seem obvious that even had the balance of the monies committed (being then about $16,000) been advanced to the corporation, they would have been required immediately for the loan repayments theretofore agreed upon, so that there would have been no cash for other purposes anyway. This would seem to be a complete answer to this contention. There was testimony of a general nature in regard to sales contracts which could not be completed because of the lack of cash, but the Court finds as a fact that any damages claimed on this account were conjectural and speculative or unrelated to the alleged breach, i.e., failure of a planned advertising campaign, projected profits for the ensuing years, and equipment depreciation. For instance, even before July 1st the corporation had cash receipts

of $27,000 and loan advances of $60,000, but there is no explanation of how these funds were applied, except for $29,000 in refinancing. Particularly significant is the fact that one contract was alleged to have been lost because of the lack of a performance bond. Yet some of the individual defendants themselves would not sign such a bond. It was further claimed that the corporation was so desperate financially because of the plaintiff's action that it could not borrow money elsewhere, even though it was admitted that it had been unable to borrow money elsewhere even before entering the present transaction with the plaintiff. In short, the corporation's position was such on July 1, 1969 that the financial reverses and final demise of the corporation were unaffected by the failure to advance the remainder of the commitment, and judgment on the first or breach of contract count of the cross-claim is likewise for the cross-defendant."

On appeal appellants urge only that they should recover on the breach of contract count. We are unable to say that Judge Wise erred in his findings of fact. Rule 886.

*Judgment affirmed; appellants to pay the costs.*