FREDERICK WEHR *vs.* THE GERMAN EVANGELICAL LUTHERAN SAINT MATTHEW'S CONGREGATION OF BALTIMORE.

MARY E. WEHR, Administratrix of HERMAN WEHR *vs.* SAME.

AUGUST WEHR, Administrator *d. b. n.* of CONRAD SIEGMAN *vs.* SAME.

SURETYSHIP.

*Discharge of sureties by alteration of the contract—Effect of provision in the contract for subsequent alteration thereof—Construction of Contracts—Corporations bound by the acts of their authorized agents.*

A surety has the right to stand upon the *very terms* of his contract; and if such contract be altered or varied in any material point without his consent, so as to constitute a new agreement varying substantially from the original, he is no longer bound.

Any subsequent addition to, or deviation from the contract, is such an alteration as will discharge the surety.

But if by the terms of the original contract, additions to, or alterations in, the work are provided for, or left to the judgment and discretion of the other contracting party, either without limit or within certain limits, then the variation, if within the limits prescribed, is allowed by the contract itself, and the surety cannot complain of a variation which he has agreed to by the original contract.

Where a corporation, or other organization of persons, is represented by a select body of its own members, unless there be something in its rules, or in the delegation of authority, to the contrary, the act of the majority is to be taken as the act of the whole.

APPEALS from the Superior Court of Baltimore City.

These actions were instituted upon a bond given by the appellants to the appellee, to secure the performance by Siegman and Jones, contractors, of a contract entered into by them for the building of a church for the appellee, and to indemnify the appellee for any lien claims which might be asserted against the building, by reason of the failure of the contractors to discharge them.

Siegman and Jones contracted to build the church for $35,235, according to specifications and drawings to be furnished by the architects, Messrs. Lupus and Roby, finding all work and materials therefor, and to deliver the church to the appellee free from all lien claims.

To secure the performance of this contract, they entered into a penal bond, with the appellants as their sureties, the condition of which was, that they should "well and faithfully fulfil and keep their said contract, and in all respects perform and keep all and singular the stipulations on their part to be done and performed under the same." Among other provisions of the contract, it was agreed that "should the building committee appointed by said congregation desire to make any changes from the drawings and specifications, at any time during the progress of the work, the same shall be carried out by the said Siegman & Jones without making void, or in any manner affecting this contract. Such changes, whether in addition to or deduction from the original work, shall be specified in writing, signed by the contractors and the architects and the building committee ; the sum to be paid or allowed for such changes or alterations to be fixed and allowed by the architects, and specified by the writing aforesaid." The specification contains a similar provision, except that any changes desired by the building committee are to be specified in writing, signed by the contractors and the architects.

After the work was entered upon and the lot cleared off from the buildings which occupied it, it was found to be

APRIL TERM, 1877.          179

Wehr, *et al. vs.* Germ. Evan. Luth. St. Matthew's Cong. of Balto.

three feet and a half larger than was before supposed, and the building committee determined to enlarge the church by the same amount, and this change was specified in writing, with the price to be paid for it, $900, in the form of an agreement, purporting to be made between the German Evangelical Lutheran St. Matthew's Congregation of the one part, and Siegman & Jones, contractors, of the other part; which agreement was signed by the contractors and the architects, and by eight of the twelve persons who had signed the original contract as the building committee. It was also deemed expedient by the building committee to substitute a stone foundation for the brick and pile foundation first contracted for, and this change was also specified in writing the same way and by the same building committee, except as to one member thereof, who seems to have gone out and another substituted for him. Other changes of small importance were made, not needful to be noticed.

The church was completed and delivered to the appellee and partially paid for, but the building had been subjected to liens for work and materials largely in advance of the part of the contract price still unpaid to the contractors, and after applying the unpaid balance to the liens there remained to be paid a sum which, with the interest, amounted to $8,425.78. It was to recover this sum that the present suit was brought upon the bond.

The appellants claim that they are exonerated from the obligation of the bond by reason of the changes above mentioned, which they contend are not such changes as are contemplated in the contract and specification, and are moreover not evidenced by writings complying with the requirements of the contract. In seeking to avail of these defences they invoke the legal propositions that sureties are favored in law, that their contract is one *strictissimi juris*, that they can be held only by the precise contract which they have entered into, and that viewed in this

light, the church built with these changes is a different church from the one they contracted on account of.

The case was tried before the Court, without the aid of a jury, each party, at the close of the evidence, tendering several legal propositions which they prayed the Court to affirm and to take as rules for its decision upon the facts.

To the ruling of the Court granting the prayers of the plaintiff and rejecting those of the defendants, the defendants excepted and took this appeal.

The cause was argued before BARTOL, C. J., MILLER, ALVEY, STEWART and BRENT, J.

*Orville Horwitz* and *Albert Ritchie*, for appellants.

It will be seen from the contract, that whenever such changes as the contract authorized were made, it was expressly stipulated, viz.,

1st. That such changes should be specified in writing.

2nd. That such writing should be signed by the contractors, architects and building committee.

3rd. That the sum to be paid therefor should be fixed by the architects.

4th. That such sum should be set forth in said writing.

5th. That such extension of time as should be proper by reason of any changes, (the degree of extension being determined by the architects,) should be specified in the written agreement.

The case depends, it is submitted, upon two questions, viz.,

1st. Were the changes made such as the contract provided for?

2nd. If they were, were they made in the manner required by the contract?

"The law favors a surety, and watches his position and his rights with considerable jealousy." *DeColyar*, 388.

"The claim as against a surety is *strictissimi juris,* and it is incumbent on the plaintiff to show that the terms of the guaranty have been strictly complied with." *Bacon vs. Chesney,* 1 *Stark.,* 192.

"It is not sufficient that he may sustain no injury by a change in the contract, or that it may even be for his benefit. He has a right to stand upon the very terms of his contract; and if he does not assent to any variation of it, and a variation is made, it is fatal, and Courts of equity, as well as of law, have been in the constant habit of scanning the contracts of sureties with considerable strictness." *Miller vs. Stewart,* 9 *Wheat.,* 702.

Any variation of the terms of the original contract between creditor and debtor, whether material or not, will discharge the surety, if it appears that he became surety on the faith of the original contract, or if he has made these terms part of his own contract; and if notice were given to the surety of the terms of the contract between the creditor and the debtor, and after such notice he executed the guaranty, he is held to have become surety *on the faith* of the original agreement; and where the surety has made the terms of such original contract part of his own contract, any variation will discharge the sureties, because it amounts to a breach of the contract with him. *DeColyar,* 389–90–94; *Gardiner vs. Harback,* 21 *Ill.,* 129.

In *Steam Navigation Company vs. Rolt,* 6 *C. B.,* N. S., 550, the surety was discharged because the contractor was allowed to anticipate payment of the last two instalments.

In *Calvert vs. London Docks Co.,* 2 *Keen,* 638, the surety was discharged because contractor was paid more than instalments provided for.

In *Bacon vs. Chesney,* 1 *Stark.,* 192, it was held that where surety guaranteed payment for goods, provided eighteen months credit were given, and the goods were sold on credit of twelve months, the surety was not liable, though six additional months were afterwards given.

In *Whitcher vs. Hall,* 5 *B. & C.,* 269, where the agreement was, that the tenant should have from the landlord, the milking of 30 cows, at £7.10s. per annum, and, in fact, he had the milking of but 28 during the part of the year, though he had 32 during another part, it is held that the surety for the rent was discharged.

In *Phillips vs. Astley,* 2 *Taunt.,* 206, it was held that on a contract to guarantee a bill for a given sum, the surety was not responsible, even to the extent of the given sum, on a bill given for a larger sum.

"The principle is perfectly settled that the creditor, by making a new agreement with his debtor, inconsistent with the terms of the original agreement, or any alteration in those terms, or in the mode or the time of performing them, without the assent of the surety of such debtor, thereby discharges the surety." *Sasscer vs. Young,* 6 *G. & J.,* 247.

In *Mayhew vs. Boyd,* 5 *Md.,* 109, it is held, that whether the endorsers were prejudiced, or their liability enlarged, or not, by the departure shown, did not vary the question; that "any dealings with the principal debtor by the creditor, which amounts to a departure from the contract by which a surety is to be bound, and which by possibility might materially vary or enlarge the latter's liabilities without his assent, operates as a discharge of the surety."

In *Zimmerman vs. Judah,* 13 *Ind.,* 286, it was held that a subsequent agreement between owner and contractor, made without the knowledge or consent of the surety, to put an additional story on the building contracted for, was such an alteration of the original contract as discharged the surety.

In *U. S. vs. Jillotson,* 1 *Paine,* 305, the sureties were discharged because a subsequent contract modified the original one. It is also held there, "that the sureties were bound only to look to the contract to learn the extent of their responsibility, and they are entitled to all the

guards and checks it contains, to shield them from risk and hazard." *Page* 328. See also, *Sharp's Rifle Case,* 33 *Conn.,* 1; *Brigham vs. Wentworth,* 11 *Cush.,* 123; *Manufacturers' Bank vs. Cole,* 39 *Me* , 192–3; *Bagley vs. Clark,* 7 *Bosw.,* 94; *Taylor vs. Johnson,* 17 *Ga.,* 521; *Smith vs. U. S.,* 2 *Wall.,* 236; *Rathbone vs. Warren,* 10 *John.,* 587; *Burge, ch.* 8, *page* 214; *Parson on Notes and Bills,* (2nd *Ed.,*) 239.

In *Green vs. Miller,* 6 *John.,* 39, there was a submission to five arbitrators, and nothing said as to whether all were to agree in the award, or whether it was to be made by a majority, or any less number than the whole: only four agreed to the award; held, that "as a submission to arbitrators is a delegation of power for *a mere private purpose,* it is necessary that all the arbitrators should concur in the award, unless it is otherwise provided by the parties. In matters of public concern, a different rule seems to prevail; there the voice of the majority shall govern."

In *Sinclair vs. Jackson,* 8 *Cow.,* 544, it is held that when several persons are appointed trustees, or have power to act for a mere private (not a public) purpose, they must all join in executing the trust or power. See also, *Perry on Trusts, secs.* 412, 413.

*Stewart Brown* and *Frederick W. Brune,* for appellee.

The defences set up by the sureties are, that they are discharged from all liability by reason of certain alterations in the church building, which were made, as is alleged, without the consent of the sureties, and which changes they contend were not provided for in the orginal contract, or were not made in the mode and form provided by the original contract, with reference to such alterations as said contract permitted to be made in the plans or works.

Upon examination of the finding of the Court below, with a view to ascertaining which are the true questions on this appeal, we find that the Court decided,—

184            MARYLAND REPORTS.

Wehr, *et al. vs.* Germ. Evan. Luth. St. Matthew's Cong. of Balto.

(A.) That all the changes complained of were reasonable and proper under the circumstances, and did not materially change or affect the general character and plan of the building.

(B.) That as matter of fact, the changes specified as Nos. 1, 2, 3 and 4 were evidenced by writings, duly executed in conformity with the contract and specifications.

(C.) That in fact there was no such extension of the building as claimed under No. 5, and no such delay as claimed uuder No. 8.

(D.) The Court disregarded the extra digging incidental to and made necessary by the extra stone foundation, as a matter that could, in no way, have increased or affected the responsibility of the contractors, and which, therefore, could not affect the sureties, as all the evidence showed this digging was done by the committee themselves, and by them paid for.

(E.) The Court also found, in effect, that the minor alterations, made even without the intervention of the committee, were under the simple permission of the architects, for the benefit of contractors, and accepted in lieu of stricter and more expensive requirements of the original specifications, and fell under the general power conferred on the architects by the contract, of directing the works to be performed in their way, whether so appearing in the drawings, &c., or not.

(F.) It was, indeed, expressly conceded by the defendants, that all the admitted changes, other than Nos. 1 and 2, were unimportant in themselves, and that standing alone they would not discharge the sureties, and the Court, as a fact, found that these were of trifling importance, and within the fair intendment of the contract.

It would seem, therefore, that the only questions open on this appeal, pertain to the changes in the plans above referred to as No. 1, the extension of the church three and a half feet, and No. 2, the extra stone foundation, and

their bearing upon the responsibility of the contractors and sureties. These changes, (as well as all the others originally set up by defendants, but either abandoned or found by the Court not to have been actually made,) the plaintiff contends were made fairly in compliance with the terms and provisions of the building contract and specifications, which expressly permit *any changes,* whether in addition to or deduction from the original works.

Looking at the contract in this connection, in the first place we find,—

I. That this contract, in the first place provides for "all the works necessary to be done in and about the erection and completion of a church for aforesaid congregation, on East Fayette street, Baltimore, Maryland—the same to be executed according to the drawings, specifications and directions of Lupus & Roby, Architects."

Further, that contractors are to provide and deliver, &c., "free from all claims, liens and charges," all work and labor necessary for the proper and complete execution of the building, and erect the same agreeably to the specifications, drawings, dimensions and explanations, which may become necessary according to the true intent and meaning of the drawings and specifications, which are to be taken together, the one to explain and illustrate the other. And should it appear that any of the works hereby intended to be done are not fully explained and detailed in said specifications and drawings, the said Seigman and Jones shall apply to the architects for such further detailed explanations, and perform their orders as part of the contract."

Further, the contract provides as follows:

"And it is distinctly understood and hereby agreed, that should the building committee, appointed by said congregation, desire to make *any changes from the drawings or specifications at any time during the progress of the works, the same shall be carried out by said Seigman &*

*Jones, without making void, or in any manner affecting this contract.*

"*Such changes, whether in addition to or deduction from the original works*, shall be specified in writing, signed by contractors and the architects and the building committee. The sum to be paid or allowed for said changes or alterations, to be fixed or allowed by the architects, and specified in the writing aforesaid. The decision of the architects, on this and all other matters, and in cases of dispute, shall be final and binding on all parties." The contract then proceeds:

"The contractors hereby admit that they have examined the drawings and specifications for said building, and that they are complete and sufficient for the substantial and efficient erection of the building. But it is further agreed, that whatever may be necessary to be done in order to complete the building, according to the true intent and meaning of the drawings and specifications, such works, although they do not appear in either, are to form part of the contract as much as if fully set forth in both, and no extra charge made for the same."

Provision is made for completion of basement by July 1st, and whole church by November 1st, under a penalty. "And this condition not to be made void by any alteration or additional works being performed, but in such case the time shall be extended as shall be deemed proper by the architects, and specified in the written agreement for the additional works, and an additional month to be allowed in reference to the completion of basement and entire building in case piling is necessary."

This contract was executed January 22nd, 1872, and the bond referring to it executed the same day.

In the specifications, which are made *part of the contract*, the following provision is found.

"In case the building committee may desire to make *any changes from the drawings or specifications* during the

progress of the works, such changes, whether in *addition to or deduction from the original works*, shall be specified in writing, signed *by contractors and the architects*," &c.

These provisions of the contract would seem to be broad enough to provide for and to be an assent in advance on the part of the sureties to *any changes* in the works, *additions* thereto or deductions therefrom, that might be desired by the committee, or directed by the architects, and if so, unless they were controlled by some other provision of the contract, the penalty of the bond would be the only limit fixed by the sureties to their responsibility.

II. The inquiry here is what, according to the true construction of the bond and the contract referred to therein, is the obligation by which the parties intended to be bound when the same were executed ; and what rule of construction is to be applied to such contract?

While it is well settled in Maryland, (*Mayhew vs. Boyd*, 5 *Md.*, 102,) that a departure as between the obligee and principal obligor from the terms of the contract, without the knowledge or assent of the surety, discharges the surety, and that "the liability of a surety will not be extended *by implication* beyond the terms of his contract;" it is also well settled, (*Strawbridge vs. B. & O. R. R. Co.*, 360, 367,) that the surety "will be liable to *the full* extent, which the terms of the obligation or the nature of the act for which he has obliged himself, will warrant," and in reference to the matter of the construction of the contract, the same case, page 367, says, "regard must be had to the intention of the parties when it was executed;" and again, "this bond must have such a construction as the parties meant it to have at the time they entered into it;" and further, "the nature of the duty of the obligor, and character of the obligee, will be regarded as explanatory of the intent of the parties."

This is the same rule of construction which is applied to any other contract, that is to say, looking at the char-

acter and circumstances of the parties, and the subject-matter of the contract and the object to be attained, the meaning and intention of the parties is to be ascertained and effect given thereto by a fair and reasonable interpretation of the language used. *Engler vs. People's Fire Ins. Co.*, 46 *Md.*, 322.

ALVEY, J., delivered the opinion of the Court.

When the case of Heise & Company, and others, against the present appellees was before this Court at the October Term, 1875, reported in 44 *Md.*, we declined passing upon the question, then discussed by counsel, as to whether the sureties in the bond of Siegman & Jones, the contractors, were discharged by reason of the facts there alleged ; those facts depending as they did upon a conflict of evidence. We declined deciding the question, supposing it to be more appropriate that the conflicting evidence should be passed upon by a jury ; and there was also the further reason, that all the parties obligated by the bond were not then before the Court. As no definitive order or decree could then be passed against the bond, to bind all the parties thereto, we deemed it proper to remit the whole question of the liability of the bond to a Court of law. That question has been properly raised by an action on the bond, and has been decided adversely to the defendants, the present appellants, and from that decision they have taken this appeal.

The case was tried in the Court below before the Judge, acting in the double capacity of Court and jury. Each party, at the close of the evidence, tendered certain legal propositions, which they prayed to be affirmed by the Court and- taken as rules for its decision upon the facts that might be found. The Court filed in the case a written opinion, which appears in the record, and in which are discussed both law and fact; and in the conclusion the several propositions offered by the parties are ruled upon

by the Court. There is but one exception presented, and that was taken by the appellants to the rejection of their propositions and the granting of those on the part of the appellees, and to the rulings of the Court in its opinion. This, of course, does not embrace the rulings or findings of the Court as to matters of fact. All the facts stated as found, and upon which the verdict is based, must be taken as conclusively established, and therefore not open to review in this Court. Whether the finding of facts by the Court be general or special, such finding has the same effect as a verdict of a jury rendered in the particular form; and this Court has no more power over the facts in the one case than in the other. It is only the propositions of law, ruled upon by the Court below, that can be reviewed here, when properly presented.

The bond sued on recites that Siegman & Jones, by their contract of the same date of the bond, had contracted with the appellees to erect and complete a church, according to the plans and specifications, and upon the terms and conditions mentioned in the said contract; and the condition of the bond is, that the contractors should well and faithfully fulfil said contract, and in all respects perform and keep all and singular the stipulations on their part to be done and performed under the same. The breaches assigned are, that the contractors failed to erect, finish and complete the building and works in the time, with the materials, and in the manner provided for by the contract, or according to the plans and specifications in the contract referred to; and further, that the contractors did not find, provide and deliver at their own cost and charge, free from all claims, liens, and charges whatsoever, all the work and materials necessary and proper for the complete execution of the building, as they were bound to do by their contract.

The sureties resist recovery on the bond, and take the defence that they have been discharged, by reason of cer-

tain additions and alterations in the work, not warranted by the original contract. And the additions and alterations supposed to have this effect were, 1st, the extension of the length of the building $3\frac{1}{2}$ feet; 2nd, the change in the foundation of the building from a brick to a stone wall, with additional excavations; 3rd, the placing of moveable pews in the basement of the church; 4th, the furnishing and placing of ventilators, and some slight change about the pulpit and the chancel; and it is objected, 5th, that the specifications or supplemental contracts for the additional work were not executed in manner required by the original contract; and 6th, that there was no time extended for doing the additional work.

These matters were all made subjects of legal propositions submitted to the Court by the appellants, but which were refused.

With respect to the general principle relied on by the appellants, there is really no question. All the difficulty consists in its application to the particular facts of this case.

It is perfectly well settled that a surety has the right to stand upon the very terms of his contract; and if such contract be altered or varied in any material point without his consent, so as to constitute a new agreement varying substantially from the original, he is no longer bound. *Mayhew vs. Boyd*, 5 *Md.*, 102; *Miller vs. Stewart*, 9 *Wheat.*, 680; *Whitcher vs. Hall*, 5 *B. & Cr.*, 269; *Bonar vs. Macdonald*, 3 *H. L. Cas.*, 226, 239. And any subsequent addition to, or deviation from the contract, is such an alteration as will discharge the surety. But if, by the terms of the original contract, additions to or alterations in the work are provided for, or left to the judgment and discretion of the other contracting party, either without limit or within certain limits, then the variation, if within the limits prescribed, is allowed by the contract itself, and the surety cannot complain of a variation which

he has agreed to by the original contract. *Stewart vs. McKean,* 10 *Exch.,* 675. And whether the present case falls within the principle there stated, depends upon the terms and construction of the original contract, and the nature and extent of the changes in, and additions to, the plan and finish of the work as originally contemplated.

The original contract referred to in the bond, provided, among other things, that the contractors should find, provide and deliver, at their own cost and charge, free from all claim, liens and charges whatsoever, all and every kind of material, and work and labor which might "be necessary and proper for the complete execution of the building, and erect, build, finish and complete, in a good and perfect manner, (to the entire satisfaction of the architects,) the buildings and works, agreeably and conformably, in all and every respect, to the specifications, drawings, dimensions, and explanations which may become necessary, according to the true intent and meaning of the drawings, and specifications." It is further provided, that if it should appear that any of the work intended to be done, was not fully explained and detailed in the specifications and drawings, the contractors should apply to the architects for such further detailed explanations, and perform their orders as part of the contract. Then follow these important provisions :—

"And it is distinctly understood and hereby agreed, that should the building committee appointed by said congregation desire to make any change from the drawings or specifications at any time during the progress of the works, the same shall be carried out by said Siegman & Jones without making void or in any manner affecting this contract.

"Such changes, whether in addition to or deduction from the original works, shall be specified in writing, signed by the contractors, the architects, and the building committee. The sum to be paid or allowed for such

changes or alterations to be fixed and allowed by the architects, and specified in the writing aforesaid. The decision of the architect in this, and in all other matters, and in cases of dispute, shall be final and binding on all parties."

In another paragraph, it is stipulated that the work should be commenced immediately after signing the contract, and that the basement portion of the building should be completed and delivered up to the appellees on or before the 1st of July then next, and that the entire building should be completed and delivered up on or before the 1st of November then next, under penalty of $25 per day for every day the work should be delayed beyond the time specified; "and this condition not to be made void by any alterations, or additional works being performed, but, in such case, the time shall be extended as shall be deemed proper by the architects, and specified in the written agreement for the additional works; and an additional month be allowed in reference to the completion of basement and entire building, in case piling is necessary."

The contract containing these provisions was executed on the 22nd of January, 1872, by the contractors, and by the appellees by their building committee, consisting at that time of twelve members.

We fully concur with the Court below in its construction of the contract. We think it clear that the additions and alterations were all within the contemplation of those provisions of the original contract to which we have referred. The power to make additions and alterations, as we have seen, was plainly reserved, and was of the most comprehensive nature; and to say that the additions and alterations that were actually made were not within the reservation, would be placing such a restriction upon the terms of the contract, as is neither justified by any rational rule of construction, nor consistent with the manifest design of the parties. As is well observed by

the learned Judge of the Superior Court, the subject of the contract was the building of a church,—an undertaking of considerable importance, and in regard to which the committee had not only their own views to consult, but the views and wishes of a large congregation. "In the general experience with reference to building, even in the more moderate matter of a private dwelling, it is well known, that the modifications of plans as the work is developed is of the commonest occurrence; and one of the dangers of such modifications is the avoiding of contracts, where there is no express provision made therefor. It is wise, therefore, that such a contingency should be foreseen and provided for, by suitable conditions in the contract; and such seems to have been done here." It is no argument against the construction adopted, that there is great difficulty in fixing a limit within which additions and alterations might be made. That argument, if of any force at all, goes to the denial of the right to make any additions or alterations whatever;—a proposition utterly inconsistent with the terms of the contract.

And then, as to the manner of executing the specifications or supplemental contracts, in regard to the additions and alterations, we think they were substantially in compliance with the original contract. Those in regard to the extension of the building, and the change in the foundation, were signed by the contractors, the architects, and eight persons as a building committee. The price to be allowed for the work was fixed in both; and, as we must suppose, by the judgment and approval of the architects. But it is contended, that inasmuch as the original contract was signed by a building committee consisting of twelve persons, the contractors and their sureties had a right to expect that the committee would continue to be composed of the same number; and that, as the supplemental contracts or specifications were signed by only eight of such committee, instead of twelve, such supple-

13                    v. 47.

mental contracts or specifications were not duly executed; that, assuming the committee to consist of twelve, no number less than the whole were competent to act. But, in answer to this objection, it is sufficient to say, that there is nothing in the contract requiring the committee to consist of any particular number, and there is nothing in the record to show that the eight signing the specifications were not the full committee at the time. But, assuming that the committee consisted of twelve at the time of the signing the supplemental contracts or specifications, still, we are of opinion that a majority of that number was competent to act. The committee represented the corporation in the particular matter; and it would lead to great inconvenience, and, in many cases, work great obstruction and wrong, to adopt the construction contended for by the appellants. We think this a case when the general principle applies, that where a corporation, or other organization of persons, is represented by a select body of its members, unless there be something in its rules, or in the delegation of authority to the contrary, the act of the majority is to be taken as the act of the whole. It is the general understanding, as observed by LAWRENCE, J., in *Withnell vs. Gartham, C. T. Rep.*, 388, that when a body of persons is to do an act, a majority of that body will bind the rest. See also *Ang. & Am.*, secs. 499 to 503. When, therefore, it was stipulated that the specifications for the additional work should be signed by the committee, that stipulation was gratified by the signing of a majority of that body.

Then, as to the specification in regard to the moveable pews, that was signed by the contractors, the architects and the building committee by their secretary. The price was also fixed in this specification; and the only question is, whether it was signed by the committee as required by the contract. If the secretary signed for the committee, and by their authority, as the Court was required to find,

according to the appellees' fifth prayer, affirmed by the Court, we think there was a sufficient signing within the meaning of the contract. The act was certainly sufficiently authenticated to bind the corporation, and the specification was accepted and acted upon by the contractors and the architects, as the authentic act of all parties.

The other small modifications that occurred in the mere detail of the work as it progressed, have not been seriously pressed; but the only prayer of the appellants that refers to them is the third, and that prayer, being objectionable upon several grounds, was properly refused. It was specially objectionable, because it concluded against the appellees' right to recover, if the Court should find that such modifications were made, without any reference whatever to the evidence given in explanation of them, and the circumstances under which they occurred.

The only remaining question is that in regard to the failure of the appellees to extend the time for the additional work. But upon examination of the contract, we find that that matter was left exclusively to the architects, and if they did not deem the extension of time necessary or proper, of course there was no extension given; and as the supplemental contracts are silent upon the subject, we may suppose that such extension was not asked for or deemed necessary.

It follows from what has been said that the Court below was correct in affirming the legal propositions offered by the appellees, and in rejecting those on the part of the appellants; and the judgments appealed from must be affirmed.

*Judgments affirmed.*

(Decided June 19th, 1877.)