# CHARLESTON.

STATE v. HUDSON PAVING & CONSTRUCTION CO. *et al.*

Submitted May 9, 1922.    Decided May 23, 1922.

1. PRINCIPAL AND SURETY—*Where County Court Contracts for Permanent Improvement of Public Road, With the Right to Take Over and Complete on Default, it is Not Bound to do so.*

   Where a County Court enters into a contract with a contractor for the permanent improvement of a public road, which provides that in case the contractor shall make default in the due performance of the contract, the County Court, in case such default shall continue for a specific period after notice, shall have full power and authority to take the work, in whole or in part, out of the hands of the contractor and complete the work by contract or otherwise, it is not bound to do so, but may sue the contractor and its surety upon its bond without exercising such right to take over and complete the work. (p. 390).

2. SAME—*Surety on Contractor's Bond is Not Relieved By Alterations Contemplated By the Contract's Terms*

   If a road-building contract between a County Court and the contractor permits alterations to be made in the work to be done or in the materials to be furnished, at the option of the County Court, the surety upon the contractor's bond will not be discharged by reason of material alterations in work or materials without its express assent, where such alterations are contemplated by the terms of the contract. (p. 393).

3. SAME—*Surety on Paving Contractor's Bond Held Not Released By County's Change in Specifications of Materials.*

   A County Court entered into a "blanket form" contract under which the contractor agreed to do all the work and furnish all the materials in the construction of a public road. There were six different kinds of paving materials designated and upon which the contractor made alternate bids upon a unit basis; the paving material finally agreed upon was rocmac, but by the terms of the contract the County Court reserved the right to make any changes in the work or materials it might deem proper. The contractor executed a bond for the faithful performance of the contract. Afterward the County Court substituted concrete of a 1-2-4 mixture for the rocmac paving, the contractor agreeing to furnish and lay it at the same price per square yard. Such change in the work and materials were contemplated by the parties at the time the

contract and bond were executed, and though made without the knowledge of the surety, does not release it from its liability upon the bond, it having assented to such change in advance. (p. 396).

4.  DAMAGES—*Damages for Breach of Road Building Contract Held Assessable as of Date of Breach.*

As a general rule, the rights of parties under a contract which has been discharged by breach are fixed at the time of such breach; and where a road-building contract provides that in case the work is unnecessarily delayed or the contractor wilfully violates any of the covenants or conditions of the contract the County Court may take possession of the work, complete it by contract or otherwise, and charge the expense thereof to the contractor, damages are to be assessed in a suit brought by the County Court against the contractor and its surety on its bond for breach of the contract, as of the date of the breach. (p. 397).

Error to Circuit Court, Randolph County.

Action in debt in the name of the State of West Virginia, for the use of the County Court of Randolph County against the R. M. Hudson Paving & Construction Company and another. Verdict and judgment for plaintiff, and defendant United States Fidelity & Guaranty Company brings error.

*Affirmed.*

*Simms & Staker,* and *C. O. Strieby,* for plaintiff in error.
*W. B. Maxwell,* for defendant in error.

MEREDITH, JUDGE:

This is an action in debt instituted in the name of the State for the use of the county court of Randolph County against R. M. Hudson Paving and Construction Company, hereinafter called the "contractor," and United States Fidelity and Guaranty Company, its surety, upon a bond executed in favor of plaintiff in the sum of $46,000, conditioned for the faithful performance by the contractor of a road building contract, being one of five contracts, executed by the same contractor for the building of certain roads in Leadsville District, under a road bond issue. The particular contract is known as "Contract No. 1 Beverly Pike and Seneca Road." It is dated August 12, 1916, and is one of the "blanket form" contracts commonly used in the con-

struction of permanent roads. The plans, specifications and bids were made a part of the contract. The bid of the contractor was upon a unit basis, and covered various specified kinds of materials, such as concrete, tarvia penetration, asphaltic concrete penetration, water bound macadam, brick paving and rocmac, for each of which prices were named by the bidder. The Beverly Pike portion of the contract was to be paved with concrete. That part was finished in 1916, and is not involved in this controversy. This action concerns only the uncompleted portion of the Seneca Road. The contract was let upon the unit basis and called for rocmac construction with a four-inch crushed stone base on the Seneca Road. The contractor was to do all the work and furnish all the materials and appliances. It was to do the grading at 50 cents per cubic yard, furnish and lay the rocmac with crushed stone base at $1.19 per square yard, furnish and lay the required 18 inch vitrified pipe at $1.15 per lineal foot, and the 12 inch vitrified pipe at 75 cents per lineal foot. The State Road Bureau refused to approve the rocmac construction and in February, 1917, it was agreed between the county court and the contractor that a five inch concrete roadway nine feet wide of a 1-2-4 mixture would be built on the Seneca Road in lieu of the rocmac roadway of the same width as originally agreed upon, and that for this paving the contractor should receive the same price per· square yard as for the rocmac. The other items were not changed. The contractor proceeded with the work, completing all of the grading but 1000 cubic yards, laid all of the concrete paving but 4500 square yards, and furnished and put in all but 60 lineal feet of the 18 inch pipe and 60 lineal feet of the 12 inch pipe; it quit the job sometime late in 1917. No further work was done. The World War was in progress and the contractor excused itself from going on with the work by reason of railroad embargoes on road materials and on account of the scarcity of labor. The contractor became insolvent. It appears that this did not become known to the county court until the spring of 1918. In April, 1918, a representative of the contractor appeared at Elkins and endeavored to enter into a new contract to

finish the road, but this was refused. The court directed its engineer to notify the contractor to proceed with the work and also to notify the surety to have the contractor complete its contract or that the surety itself take over and complete it. The matter drifted along till February, 1919, without result. The county court then notified the contractor and its surety to begin work under the contract within 10 days and to prosecute the work to completion at the earliest possible date and that unless notice should be received by the court within 15 days from the receipt by them of its notice that they or one of them intended to complete the work according to the contract, then the county court would complete the work as provided by the terms of the contract. The contractor and surety failed to go on with the work and the county court in April, 1919, advertised for and received bids on the work to be done, but deeming the bids too high, all bids were rejected. This suit was instituted August 5, 1920, and the case was tried about March 21, 1921, resulting in a verdict in favor of the plaintiff for the sum of $5,329.22, upon which judgment was entered. The surety obtained a writ of error.

There are but three main questions in this case, all involving a construction of the contract, and they will be taken up in order.

First: Was the county court bound to take over and complete the work before bringing suit? This point is raised by defendant's demurrer to plaintiff's declaration, and also by its special plea No. 4 which was rejected by the court. The defendant claims that the remedy provided by the contract, in case of the contractor's default, is exclusive. The provision in the contract upon which defendant's counsel rely in this respect is as follows:

> "If the Contractor shall become insolvent, or be declared bankrupt, or shall from any other cause, in the judgment of the engineer, be unable to carry on the work; or if he shall make default in the due performance of the agreement or any or all of the conditions herein enumerated, or in diligently proceeding with the work, and the Engineer shall give notice in writing of such delay, neglect or default to

the Contractor, specifying the same, and if the Contractor shall, for a period of ten (10) days after such notice, not proceed satisfactorily in accordance therewith, then the County Court shall, on written certificate of the Engineer of the fact of such delay, neglect or default, and on the Contractor's failure to comply with such notice, have full power and authority, without violating this contract, to take the work wholly or in part out of the hands of said Contractor, to appropriate and use any or all of the materials and tools on the ground as may be suitable and acceptable, and may enter into a contract for the completion of said work according to the terms and provisions of the contract. The cost and charges incurred by the Court, together with the cost of the completion of said work, shall be deducted from any moneys due or which may become due said Contractor, and in case the expense so incurred by the Court is less than the sum which would have been payable under this contract if the same had been completed by the said Contractor, then the said Contractor shall be entitled to receive the difference, and in case such expense shall exceed the last sum, then the Contractor shall on demand, pay the amount of said excess to the County Court, but such excess to be paid by the Contractor shall not exceed the amount of the security for the performance of this contract.''

For this proposition we are cited to the case of *Goss* v. *Northern Pacific Hospital Association,* 50 Wash. 236, 96 Pac. 1078, and to 13 C. J. 696. The case cited arose upon a building contract. The principal contractor sued the owner for certain deductions made by the architect and for extra work done and for damages occasioned by the delay of another who had an independent contract to do the plumbing work. Goss was employed to build the hospital but he was not required to put in the plumbing nor to install the heating plant in the buildings. Goss's work was delayed through the fault of the plumbing contractor. It was provided in Goss's contract: ''Should the contractor be obstructed or delayed in the prosecution or completion of his work by the act, neglect, delay or default of the owner or the architect, or any other contractor employed by the owner upon the work, or by any damage which may happen by fire, lightning, earthquake or

cyclone, or by the abandonment of the work by the employees through no default of the contractor, then the time herein fixed for the completion of the work shall be extended for a period equivalent to the time lost by reason of any or all of the causes aforesaid.'' The court held that the contractor could not recover damages from the owner resulting by reason of the delay of the plumbing contractor on the ground that the provision for the extension of time equivalent to the period lost occasioned by such delay was the contractor's sole remedy.    That, however, is quite different from the present case.    In this case the county court is given the power and authority without violating the contract to take the work wholly or in part out of the hands of the contractor, but it is not in any sense required to do so.    In the case of *Flat Top National Bank* v. *Parsons,* 90 W. Va. 51, 110 S. E. 491, the defendant in a suit upon a note executed by him which had been pledged as collateral with another note to the Bank contended that the remedy of the Bank set out in the pledgor's note, to-wit, a sale of the collateral, was exclusive, and that the Bank could not maintain an action against him upon the pledged collateral, but the court held otherwise.    We think a proper construction of the contract in this case simply gives the county court the right, but does not require it, to take the work off the hands of the contractor and to complete the work before suit.    It therefore follows that the demurrer to the declaration and each count was properly overruled and defendant's special plea No. 4 was properly rejected.

Second:    It is contended by defendant, the Guaranty Company, that after the contract and bond had been executed the contract was materially changed by an agreement made between the county court and the contractor to the prejudice of the surety and without the surety's consent, and that this operated as a discharge of the surety; on the other hand, it is claimed by plaintiff that the surety authorized the change, though plaintiff claims that no authority was necessary.    If no consent on the part of the surety was necessary, then we need not inquire whether such consent was actually given.

Bearing in mind that this is a ''blanket form'' contract

providing for the various kinds of materials of which the court had a right under the contract to require the road to be constructed, and which contract was before the surety when it executed the bond, let us see what the contract says in regard to changes. It provides:

> "The said Engineer, with the written consent of the County Court shall have, and is hereby given, the right and power to make any alterations or changes in the work, and the materials required by the plans, drawings, descriptions and specifications of this contract as he may deem proper and necessary, but in case of any such changes or alterations the same shall be ordered in writing by the County Court and the price or prices thereof shall be mutually agreed upon. In the absence of such written order or agreement, it shall be deemed, taken and treated as conclusive upon all parties, that no change or alteration has been ordered.

> ❊  ❊  ❊  ❊  ❊  ❊  ❊  ❊  ❊  ❊

> It is distinctly understood and agreed that if in any one or more instances a change or alteration is or shall be made, as herein provided, whereby any part or feature of this contract or said plans, specifications, etc., shall be dispensed with, or which shall reduce or lessen the cost and expense on the part of the party of the second part, the consideration to be paid by the party of the first part shall be reduced to the extent of the reduction of the cost and expense incurred in any way by the said party of the second part in consequence thereof which shall be fixed and determined by the said Engineer by a calculation based as far as possible upon and at the prices named for the kind of labor and material involved therein worked, or worked and in place, as the case may be, as specified and set forth in the proposal of the said party of the second part made at the time of letting this contract."

The contract clearly shows that the parties contemplated future changes in the work and materials. Permanent road building was then, as indeed it still is, in the experimental stage, and the County Court very wisely reserved the right

to change the work or materials. Constant improvements in methods and materials were being made. No one could then, nor can now, foresee what is the cheapest and best type of road. Even very few buildings of any kind are built exactly according to the original plans and specifications, but changes are made during the progress of the work, as experience and knowledge or necessities dictate. When this contract was executed, rocmac was not in general use in road building; concrete of a 1-2-3 mixture was. The contractor's bid for the 5 inch concrete roadway was at the unit price of $1.41 per square yard, with the concrete to be of the 1-2-3 mixture. It made no bid on the type of 5 inch concrete road to be of the 1-2-4 mixture. Its bid, however, did cover "concrete 1-2-4 at $8.00 per cubic yard." This was intended for construction work calculated upon a cubical basis, such as bridge abutments and work of like character. The 1-2-4 mixture was cheaper than the 1-2-3 mixture; hence the contractor agreed to substitute concrete of the 1-2-4 mixture for the rocmac, at the same price. This change and the price were mutually agreed upon by the County Court and the contractor. So far as the record discloses, the contractor could have built the road as cheaply of concrete with the 1-2-4 mixture as it could of the rocmac; but whether it could or not, it agreed to substitute the concrete for the rocmac, at the same price. The County Court had the right to make this substitution without the consent of the contractor, but the contractor had a voice in fixing the price of the change in the work and material. Had they not mutually agreed, then the contractor would have been allowed any increased cost occasioned by the change; and if it had cost less than the contract price, the County Court would have been allowed the amount saved. This provision is fair to both parties. When the contractor agreed to the price for the substitution, it acted upon the judgment of its officials who were experienced road-builders. They acted in the interest of their company, and we think that the surety, when it executed the bond not only contemplated that changes might be made in the work, but consented thereto in advance and that the prices might be fixed by mutual

agreement between the County Court and the contractor.
It relied upon the judgment and ability and interest of those
in charge of the contracting company. The surety reserved
to itself no right to determine the price of any changes in
the work or materials. Whatever interest it had in the prices
that might be agreed upon, it entrusted to its principal. The
agreement for the change in materials and the price therefor
having been made in good faith, without fraud upon the
surety, the surety, at the time the bond was executed, must
be deemed to have assented thereto, and it is not released
from its obligation on the bond, though such change may
have been made without its knowledge or consent after the
execution of the bond. Indeed, if the surety had to be con-
sulted in every such instance and its assent secured, surety
bonds under building contracts would be of very little benefit
to the owner. We find the rule stated in 21 R. C. L. 1012:
"It is well settled that if the contract between the owner
and the contractor permits alterations to be made in the
work to be done, or if the bond itself permits the alterations
the surety will not be discharged by reason of a
material alteration made without his express consent,
where such alteration is one contemplated by the
terms of the stipulation permitting alterations."

. In *Wehr* v. *German Evangelical Lutheran St. Matthew's
Congregation,* 47 Md. 177, it was held: "But if by the terms
of the original contract, additions to, or alterations in, the
work are provided for, or left to the judgment and discre-
tion of the other contracting party, either without limit or
within certain limits, then the variation, if within the pre-
scribed limits, is allowed by the contract itself, and the surety
cannot complain of a variation which he has agreed to by
the original contract." This view is sustained by many
authorities, among which are the following: *United States*
v. *Walsh,* 115 Fed. 697; *Getchel etc. Co.* v. *National Surety
Co.,* 124 Ia. 617, 100 N. W. 556; *McLennan* v. *Wellington,*
48 Kan. 756, 30 Pac. 183; *Hedrick* v. *Robbins,* 30 Ind. App.
595, 66 N. E. 704; *Kretschmar* v. *Bruss,* 108 Wis. 396, 84
N. W. 429; *Blauvelt* v. *Kemon,* 196 Pa. St. 128, 46 Atl. 416;
*Drumheller* v. *American Surety Co.,* 30 Wash. 530, 71 Pac.

25; *American Surety Co.* v. *Scott,* 18 Okla. 264, 90 Pac. 7; *Hayden* v. *Cook,* 34 Nebr. 670, 52 N. W. 165; *Howard County* v. *Baker,* 119 Mo. 397, 24 S. W. 200.

Third: The remaining question concerns the measure of damages. The defendant insists that the damages should be ascertained as of November 1, 1917, the date fixed in the contract for the completion of the work, and its counsel claim that that is the time of the breach alleged in the declaration. We do not find that that date is the date alleged in the declaration. It avers that the work, according to the terms of the contract, was to be completed on that date and that the contractor did not then nor has it since that time completed the work. The County Court did not treat the contract as having been broken on November 1, 1917. It did not do this until after it had served notice on the contractor and surety in February, 1919, to proceed with the work. Not until the time fixed in that notice had expired, and they had failed to respond to it and proceed with the work, did the court treat the contract as breached. The contract had been partly performed, and there is nothing in the record indicating that the contractor and its surety unequivocally repudiated the contract until after February, 1919. That date, it appears to us, is the date, upon the record, when the contract was broken, and the time at which the damages should be determined. The contract specifically gives to the County Court the right to extend the time of the completion of the work, and if it did not demand strict performance within the time limited, the defendants should not complain. They acquiesced in the delay. They relied in part on railroad embargoes on road materials as a defense. Indeed, their instruction No. 12 told the jury that if they believed from the evidence that embargoes had been imposed by the railroads by the authority of the Federal Government rendering the performance of the contract practically impossible, then such embargoes were a legitimate excuse for not going forward with the contract, and that if the jury should believe that such embargoes were still in existence at the time the suit was brought, the jury should find for defendant. We do not think this instruction should have been given in that form but it shows that the defendants did not at the time the suit was brought claim the

contract was ended by breach, on November 1, 1917, but they treat the contract as continuing even up to the institution of the suit.

Again, counsel insist that inasmuch as defendants showed that the cost of completing the work was less at the time of trial than in the spring of 1919, the damages should be fixed as of the date of trial. Instruction No. 5 1-2 given at their instance so told the jury. Of course, the defendants can not complain, but they were not entitled to this instruction. As a general rule, the rights of parties under a contract which has been discharged by breach are fixed at the time of such breach, and we see nothing in this case which takes it out of the general rule. The breach occurred when the defendants, after demand was made by the County Court, refused to proceed with the work. We repeat there was no renunciation of the contract till that time; then the breach occurred, the rights of the parties were determined, and the damages should be assessed as of that date. The contract expressly provides, in case the work is unnecessarily delayed or the contractor wilfully violates any of the covenants or conditions of the contract that the County Court may enter and take possession of the work in its incomplete state, and shall have power to place such and as many persons as it may deem necessary, by contract or otherwise, to work at or complete the work, and to charge the expense against the original contract price. The amount saved is to be paid to the contractor; the excess cost, if any, is to be paid by the contractor. The contract itself fixes the time for assessment of damages as of the date of the breach. The court instructed the jury that the measure of damages was the difference between the contract price of the work and what the same work would have reasonably cost at the time of the breach, and, we think, under the circumstances shown in this case, this was correct. From this amount the jury was instructed to deduct the amount in the plaintiff's hands, being the 10 per cent of the completed work. We find there is ample evidence to support the verdict and that it is not excessive.

It may be that the instructions given for plaintiff and defendants were inconsistent as respects the time of the breach of the contract and hence different measures of damage were

stated, but defendants can not complain, if the instruction given at their instance was more favorable than it ought to have been. Plaintiff complains, and, we think justly so, but it does not ask for reversal.

It is claimed by defendants' counsel that to allow plaintiff to recover damages as of April, 1919, the date of the breach, will in effect give the county court more money than it will cost now to complete the work, and that it is entitled to only enough money to complete the road according to the contract, and they raise the query, what is to be done with the excess money? We think the County Court can find an answer to that question, as we have never known a County Court to complain of having too much money at its disposal.

Some minor points have been raised, but they are all involved in the main questions already disposed of. We find no error prejudicial to defendants and therefore affirm the judgment.

*Affirmed.*