# CHARLESTON.

STATE WHICH SUES, ETC. v. H. F. SMITH *et als.*

Submitted October 11, 1922.    Decided October 17, 1922.

1.    HIGHWAYS—*Pleas in Action for Breach of Road-building Contract Held to Present no Defense.*

     Pleas tendered in an action for damages for breach of a road building contract, and which are based upon and present an erroneous construction of a paragraph of the contract, and hence, present no defense, should be rejected.   (p. 14).

2.    SAME—*Where County Court Completes Highways after Breach of Contract, Defendant Contractor in Suit to Recover Moneys Expended May Set Off Unpresented Claims.*

     Where a road building contract has been breached, and the county court has expended monies to complete the road under the terms of the contract, and has instituted suit against the contractor to recover the same, it is not error to permit defendant to file as set-off credits to which he is entitled and claims arising out of the contract because he has not theretofore presented such credits and claims to the county court, and they have been disallowed in whole or in part; as required under the provisions of secs. 40 and 41, chap. 39, Code. (p. 15).

3.    SAME—*County Court Finishing Road Contract May Collect Money Due for Machinery and Material Furnished by it and Recover on Contractor's Bond Excess Spent in Completing Contract.*

     Where a county road building contract requires the contractor to furnish all work and material in the performance thereof and he has purchased from the county court, at a reasonable price, useful and necessary machinery and material to be used in the work and to be paid for out of the monies due him under the contract; and failing to complete the work, the county court takes it over and finishes the same under the terms of the contract; in a suit on his bond for the excess money spent in completing the contract, the county court is entitled to take the money due it for machinery and material from whatever sum was due him when he quit the work, and recover from him and his bondsman the excess expenditures, less such credits and sets-off to which he may be entitled. (p. 17).

4.   PRINCIPAL AND SURETY—*Surety on Contractor's Bond Not Re-*
      *lieved by Alterations Contemplated by Contracts Terms.*
      Second point of syllabus in *State* v. *Hudson Paving Co.,* 91
      W. Va. 387, 113 S. E 251, approved and applied.   (p. 18).

5.   TRIAL—*Binding Instructions Directing Recovery for Stated*
      *Amount Ignoring Defenses to Sustain which Evidence was*
      *Introduced Properly Rejected.*
      Binding instructions which direct the jury to find a stated
      amount in favor of plaintiff and which ignore defenses to sus-
      tain which legal evidence has been introduced, are properly
      rejected.   (p. 19).

Error to Circuit Court, Mineral County.

Action by the State of West Virginia, for the use of the
County Court of Mineral County, against H. F. Smith and
another.   Judgment for plaintiff and both parties bring
error.

*Reversed and remanded.*

*Arthur Arnold, Robert McV Drane* and *Harry G. Fisher,*
for plaintiff.

*H. P. Whitworth* and *Wm. MacDonald,* for defendants.

LIVELY, JUDGE:

From a judgment in favor of plaintiff for $4,133.04, entered
December 8, 1921, both plaintiff and defendants prosecute
error.

The litigation arises over a road building contract between
the county court and defendant, Harry F. Smith, dated Sep-
tember 26, 1916, bond for the faithful performance of which
was given by Smith with American Surety Company, as
surety, on October 26, 1916, in the penalty of $20,000.00.
The declaration, demurrer to which was properly overruled,
is on the bond, alleging breaches of the contract.   It is
averred that after Smith had undertaken the work and
constructed a portion of the road in Piedmont district of
Mineral County, known as the Ashfield Street and Keyser
Road, being from Station 25 to Station 95 at the New Creek
District line, he failed and refused to complete the same,
and plaintiff was compelled to take over the contract and

complete the road by laying 1,100 feet of concrete paving and other work at an additional cost and expenditure of $6,997.83 over what it would have cost if the contractor had completed the work under the terms of the contract. The work which should have been done by Smith, at the prices under the contract, would have cost $7,265.55, whereas, the same work done by the county court actually cost $17,188.17, leaving an excess of $9,922.62, on which a credit of $2,924.79 was allowed, being the gross amount retained by the county court under the contract on the work performed by Smith, $4,004.79, less machinery and equipment furnished him amounting to $1,140.00. The prices of material and labor advanced after Smith began the work; and being unable to complete the contract at the prices stipulated therein, he abandoned the job and breached his contract, according to the theory of the county court.

The defendants plead the general issue; and tendered, and filed over plaintiff's objection, three special pleas, to the effect that before liability had accrued on the bond the plaintiff, by its engineer, ordered and enforced a suspension of further work east of Station 85, as shown on a blue print of the road, for more than 150 working days, and therefore, under paragraph 30 of the contract, they were each relieved and released from further performance, and liability. The surety company also plead that Smith and the county court had made a new agreement, without its consent, by which the work was to be done and was done by the county court at greatly increased cost not contemplated by the original contract, and hence it was not bound thereby. It was the theory of defendants that Smith had performed a part of the work, that west of station 85, in accordance with the contract which had been accepted, and had been relieved of further performance by suspension of the remainder of the work, (east of station 85) for more than 150 working days under the provisions of paragraph 30 of the contract. These pleas should have been rejected.

Paragraph 30 of the contract, under which defendants claim right to file these pleas is as follows: "(30) Right to

Suspend Work. The right is also reserved by the Engineer and County Court to suspend work on any section or sections of the road covered by this contract for weather conditions or other valid reason. Such suspension shall not in any way invalidate the contract or relieve the Contractor from the fulfillment of any of its conditions and requirements, provided that the sum total of the time lost by such suspension of work shall not exceed one hundred and fifty (150) working days. The order for such suspension of work shall be given only by the Engineer, in writing, and the total number of working days during which the work is thus suspended shall be added to the specified time within which the Contractor shall complete his work.'' We do not interpret this to mean the same thing as the defendants do. We do not think that a suspension of any part of the work, where there is but one section of road covered by the contract, unless such suspension covered the entire work so as to cause the contractor to lose 150 working days thereon, would invalidate the contract or relieve the contractor from its fulfillment. There is but one section of road covered by this contract, and the suspension claimed under the pleas relates to only a portion of that section. It follows that the evidence introduced in support of these pleas, over the objections of plaintiff, and instructions Nos. 1, 2 and 3 for the defendants should have been rejected.

Smith filed a statement of set-off over the objection of plaintiff, and this, as well as introduction of evidence to prove the items, is claimed as error on the theory that the items therein set out for extra labor and material, amount of money retained by the court being 10% of cost of work done by defendant, and time devoted by defendant's employees in helping plaintiff's engineer in making estimates, and not paid for nor included in the estimates of work done, in all totaling $7,056.90, could not be made the subject of litigation against the county court until they had been presented to that body for settlement as required by sections 40 and 41 of chapter 39, Code, citing *Chapman* v. *County Court,* 27 W. Va. 496; *Yates* v. *County Court,* 47 W. Va. 376; *Beury C. & C. Co.*

v. *County Court,* 76 W. Va. 610; *Barbour* v. *County Court,* 85 W. Va. 359; and *Williams* v. *County Court,* 90 W. Va. 67.

The procedure required by the statute is a condition precedent to the claimant's right to sue the county court for money founded on a contract, except an order for payment out of the county treasury, and must be followed or his suit will abate. The reason for such procedure is plainly apparent. It was designed to protect the county court against useless costs and litigation. The fiscal affairs of the county coming under the jurisdiction of the county court are numerous, and its obligations in the conduct of the public business are necessarily complex and varied, and to permit the owners of claims founded on contract to sue as and when their whims or spite might dictate before presentation for audit and payment in an orderly way, would subject the court to vexatious suits and unnecessary costs.

Our cases above cited construing the statute, simply affirming what the statute plainly says, are cases where claimants have sued without following the prescribed procedure. In the Chapman case, the court decided that the allegations of the declaration were sufficient to show that there had been a substantial compliance with the statute, and the plaintiff was allowed to recover. In the Williams case the plaintiff had sued the county court upon his claim for work and material furnished by contract, which he had presented to the defendant, the county court, and which had been disallowed; but he also sued for certain damages caused by a breach of the contract in not furnishing to him grade lines, stakes and locations, and failure of the engineer to promptly make up estimates for work done. He had never presented his claim for damages for these alleged breaches, and the court was in ignorance of this claim until suit was instituted. He was not permitted to recover on this item of damage because of the statute. In the case under consideration we have a different situation. The county court has begun the litigation; the items of set-off all arise out of the subject of the litigation—the contract; they are in the nature of recoupment to, or credits against, the claim of the plaintiff.

The intent and reason of the statute has no application to situations of this character. It follows that it was not error to permit testimony to go to the jury tending to prove these items of set-off.

In plaintiff's bill of particulars was an item of charge against defendant of $1,140.00 for equipment furnished the contractor, consisting of a rock crusher, steam engine and boiler, and 4,500 feet of water pipe. This equipment was necessary, and was used by him in the work for which he agreed to pay out of the money due him from monthly estimates. It was not taken out of the monthly estimates but was paid out of and deducted from the total of the 10% retained from each estimate. The court took the view that while the contractor was liable, the surety on his bond was not liable for this sum, and so instructed the jury. The payment by machinery to the contractor of moneys due him was equivalent to paying him that much money. It enabled him to perform the contract and to that extent was a benefit to the surety. If the $1,140.00 had been paid him in money and he had expended it in purchasing necessary machinery and supplies elsewhere, could there be any question of the propriety of charging him with the money paid? And if he expends the money in purchasing from the county court, wherein is there a difference? The payment of an obligation need not necessarily be in money. Its equivalent, if accepted, discharges the debt. We think this item is a proper charge against the contractor, and should be deducted from the sum total of his credits against the gross excess of cost of completing the contract. It was proper to subtract this item from the 10% fund which was retained by the county court, and credit the remainder upon the amount necessarily expended for the completion of the work, stated to be $17,188.17. The contractor and his surety would be liable for the remainder, subject, of course, to such other proper credits to which the contractor was entitled. It was error to strike out the evidence of this item as to the surety; and it follows that the instruction to the jury to find, (if they found for plaintiff), against the surety $1,140.00 less than they found

against the contractor was also error. We cannot say what in-. fluence this instruction had on the jury. They found against the principal and surety in the same sum. The presumption is that they followed the court's instruction. Possibly they relieved the contractor of the item which they otherwise would have found against him.

It is contended by the contractor and his surety that changes were made in materials and work by mutual assent of the contractor and engineer in charge after the contract had been signed, and therefore the surety being in ignorance of the changes and not assenting thereto was released from any liability. It is asserted that the item of "cement ruble masonry" and the $5.00 per yard price therefor was inserted in the contract after it was signed. The engineer says this insertion was made before the contract was executed; while the contractor thinks it was done more than three months after the signing of the contract, and hence, after the bond had been given. We have examined the contract and proposal, and can find no insertion or change therein as claimed. There is nothing therein relating to cement ruble mansonry at $5.00 per yard. Defendants' instruction No. 12, which told the jury that if they believed the original contract was changed by insertion of the figures "100" so as to make it read "100 cu. yds. concrete foundation, per cu. yd. $5.00," by agreement of Smith and the engineer, without knowledge or assent of the surety, then they should find for the defendant surety company, was properly refused, there being no such change or item in the contract as appears from the record.

Also it is asserted that some change was made in the performance of the contract with reference to the guard rails to be erected along portions of the road, without the knowledge of the surety. By reference to the contract we find a provision for such changes. "The county court, however, shall have the right to make such additions, deductions or changes in the work to be done as it may deem necessary, making a fair allowance or deduction on account thereof, at the unit prices named in the proposal, and this contract shall

in no particular be invalidated thereby." Such changes as are here complained of were contemplated by the parties, not only in the contract, but also in the proposal, plans and specifications which are made a part of the contract. In disposing of a similar contention in the case of *State* v. *R. M. Hudson Paving Co.,* 91 W. Va. 387, 113 S. E. 251, JUDGE MEREDITH said: "The surety reserved to itself no right to determine the price of any changes in the work or materials. Whatever interest it had in the prices that might be agreed upon, it entrusted to its principal. The agreement for the change in materials and the price therefor having been made in good faith, without fraud upon the surety, the surety, at the time the bond was executed, must be deemed to have assented thereto, and it is not released from its obligation on the bond, though such change may have been made without its knowledge or consent after the execution of the bond"; citing 21 R. C. L. 1002, and numerous other authorities.

It is claimed by the surety, by reason of paragraph 198 of the contract, a portion of which reads as follows: "The said party of the second part further agrees that if at any time the party of the first part, on the report of said Engineer, shall be of opinion that the said work, or any part thereof, is *unnecessarily delayed,* or that the said party of the second party is *wilfully violating any of* the conditions or covenants of this agreement, or is *executing the same in bad faith,* it shall in writing notify the said party of the second part to cease said work, *furnish the surety in said bond a copy of said notice;*" that it, the surety, was entitled to notice that the contractor had ceased work before the county court could take over the work. The contract does not so provide. The contractor had already ceased work. He quit the job. Hence, there was no reason for the county court to give him notice to cease work, nor to give the surety a like notice. This provision of the contract applies only where the contractor is wilfully violating the terms of his contract, but continues with the work, in which event the county court has the right to stop the work, to give the contractor notice to cease work, and then it must give the surety copy of such notice. There

was no occasion for such notice in this case. So is the provision in the latter part of paragraph 198, providing for payment by the contractor and surety of the excess cost of the work when it is taken over and completed by the county court, after ten days notice of the amount of such excess cost shall have been given to them by the county court. That provision applies only where the contractor, in violation of his contract, continues with the work and his work is stopped by the county court and taken over and completed by it. It does not apply where the contractor has altogether ceased to work without being required by the county court so to do. In that event the county court has the right to complete the work irrespective of this provision of the contract.

Plaintiff's instructions 1, 2 and 3, which are binding and require the jury to find for plaintiff in certain amounts, are erroneous, and were properly refused. They ignore the defenses interposed by the sets-off, and failure of the county court to complete the contract at the least cost in order to minimize the damages against the contractor. *Sand Company* v. *Smith,* 76 W. Va. 246. Plaintiff's instruction No. 5 was properly refused. It authorized two verdicts, one against the contractor, and a lesser one by $1,140.00 against the surety.

The other assignments of error, based principally on the introduction and rejection of evidence, are disposed of, we think, by the principles herein enunciated.

The judgment is reversed, the verdict set aside, and a new trial awarded. Costs of these writs of error are awarded against Harry F. Smith and American Surety Company of New York.

*Reversed and remanded.*